

## NUMBER 13-08-00416-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**EARL WILEY,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

**On appeal from the 319th District Court of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Memorandum Opinion by Justice Benavides**

A jury found appellant, Earl Wiley, guilty of felony driving while intoxicated ("D.W.I."), enhanced by two prior D.W.I. convictions. *See* TEX. PENAL CODE ANN.§ 49.04(a) (Vernon 2008). Punishment was assessed by the court at ten years' imprisonment, probated for a period of five years, with no fine. Wiley appeals, contending that: (1) the court erred in allowing an expert witness to testify; (2) the evidence was legally and factually insufficient to support the verdict; and (3) the court erred in denying Wiley's request for a jury

instruction on post-arrest statements.  We affirm.

## I. BACKGROUND

On September 1, 2006, Texas Department of Public Safety Trooper Randy Zarate stopped Wiley after noticing that Wiley's truck veered to the right about five times.  At trial, Trooper Zarate testified that he asked Wiley whether he had been drinking, and Wiley answered that he had consumed four beers.  During that interchange, Trooper Zarate observed that Wiley had a strong smell of alcohol, slurred speech, and bloodshot eyes. Wiley stated that he had picked up some new medication, named clonazepam,[1] from the Veterans Administration.  Wiley told Trooper Zarate that he was "what you call inhibited," which Wiley explained at trial as an attempt to indicate to Trooper Zarate that he is bipolar, had not recently taken his medications, and could be prone to react aggressively.

Based on Wiley's appearance and statement, Trooper Zarate administered several field sobriety tests, including the horizontal gaze nystagmus, the walk and turn, and the one-leg stand, which he used to conclude that Wiley was intoxicated.  On cross-examination, Trooper Zarate stated that following these tests, he had the intention of arresting Wiley.  However, he did not arrest him.  He continued to administer an on-site breath test, which showed Wiley had a blood-alcohol concentration of 0.09.  According to Trooper Zarate, after the test, Wiley voluntarily stated that "he was over the legal limit."  No objection to this statement by Trooper Zarate appears in the record.

Trooper Zarate placed Wiley under arrest for D.W.I., secured the video of the arrest, and took Wiley to jail.  About an hour and a half after arriving, two additional breath tests

---

[1] "Clonazepam is used to control certain types of seizures in the treatment of epilepsy and for the treatment of panic disorders." *See* Clonazepam, http://www.drugs.com/clonazepam.html (last visited Jun. 29, 2009).

2

were performed at the jail. Wiley's test results at the jail revealed blood-alcohol concentrations of 0.069 and 0.065 (herein referred to as "Intoxilyzer 5000 results").

To explain the discrepancies between the on-site breath test and the breath tests performed at the jail, the State called Roxana Lecocke, a forensic scientist employed as the Technical Supervisor for the Breath Alcohol Testing program in Aransas, Nueces, and San Patricio Counties. At the introduction of this witness, Wiley objected to her testimony, stating that he was not given the statutorily required notice. Lecocke was allowed to testify about the effects of alcohol on a person's mental and physical faculties and that the breath machine at the jail was working properly. Lecocke also explained that because the body specifically absorbs, distributes, and eliminates alcohol in predictable patterns, the process of retrograde extrapolation may be used to make a scientific estimate of a person's blood-alcohol concentration at the time of the incident based on a known blood-alcohol concentration at some time after the incident.

After Lecocke testified, Wiley testified in his own defense and admitted that the field sobriety tests and breath tests were performed voluntarily. He also testified that the only medication that he took that day was Levitra.[2] He stated that he failed the field sobriety tests due to his physical disabilities. Wiley was found guilty of felony D.W.I., and the trial court assessed his punishment. This appeal ensued.

## II. ABUSE OF DISCRETION

By his first issue, Wiley contends that the trial court erred in allowing an expert witness to testify.

---

[2] Levitra is a prescription medicine that is used to treat erectile dysfunction. *See* Levitra, http://www.levitra.com/ (last visited Jun. 29, 2009).

## A.     Standard of Review and Applicable Law

Article 39.14 of the Texas Code of Criminal Procedure provides, in relevant part:

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trail to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence.  The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date the trial begins.

TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Vernon Supp. 2008).

We review a trial court's decision to permit an undisclosed witness to testify under an abuse of discretion standard.  *Horner v. State*, 129 S.W.3d 210, 214 (Tex. App.–Corpus Christi 2004, pet. ref'd).  The factors considered by an appellate court are: (1) whether the prosecutor acted in bad faith in failing to provide the defense with the name of the witness, and (2) whether the defendant could reasonably anticipate the witness would testify despite the State's failure to disclose the witness's identity. *Id.* at 214.

## B.  Discussion

In his appeal, Wiley states that on November 1, 2007, he filed a Motion for Discovery, which included a request for notification of experts.  *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(b).  Wiley asserts that the trial court granted his Motion for Discovery. Wiley now argues that the court erred in allowing Lecocke's testimony, in violation of article 39.14(b).  *Id*. The State does not dispute that a Motion for Discovery was filed; rather, it argues that the parties agreed to the State's open-file policy and that under the agreement, the parties asked the trial court not to rule on the motion or the discovery order.

Contrary to Wiley's argument, the record does not indicate that the Motion for

4

Discovery was granted. Indeed, as the State suggests, the record shows only that, during pre-trial proceedings, both parties agreed to the State's open-file policy and asked the court not to rule on Wiley's Motion for Discovery. During pre-trial proceedings, the following exchange took place:

[State]:     A few motions, Judge, Motion for discovery initially.

The Court:   Okay.

[State]:     And we have agreed that defense counsel will rely on the State's open file policy. We would ask that you don't rule on each specific one yet. If there is anything extra that the defense counsel would need, we'd bring that to the Court's attention and ask the court to rule on that.

[Wiley]:     That's correct, Your Honor. The D.A. has advised me that she has provided me everything she has so far, and that's fine. . . .

Wiley also notes that the trial court read the following statement into the record: "Motion for discovery was agreed to by the state per the open-file policy," and argues that the trial court acknowledged granting the Motion for Discovery. The trial court, however, was not reiterating what it had granted but was reading on the record what was provided to it in the clerk's record. This statement, set against the context of the pre-trial transcript, clearly shows that the trial court did not grant the motion. The Motion for Discovery was filed, but no ruling was obtained.

In the absence of a ruling on the motion, the court may, in its discretion, allow an unlisted witness to testify. *See Martinez v. State*, 867 S.W. 2d 30, 39 (Tex. Crim. App. 1993). Wiley argues that the trial court abused its discretion by allowing Lecocke to testify because the State acted in bad faith in not providing notice of the expert, specifically

5

stating that it is unreasonable and unconscionable to require the defense to continuously review the State's file. The State, however, contends that it complied with the open-file policy.

The court records show that an application to subpoena Lecocke was filed on May 9, 2008. There is no evidence in the record showing that the State tried to hide the application, nor is there any evidence that the State tried to deceive Wiley. Additionally, there is no evidence that Wiley's counsel availed himself of the State's open-file policy. Under the State's open-file policy, there is no duty placed on the State to take additional steps to provide notice of what is contained in the record. *See Vega v. State*, 898 S.W.2d 359, 362 (Tex. App.–San Antonio 1995, pet. ref'd) (holding that the State's open-file policy was sufficient to satisfy *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). The record reveals that Wiley was aware of the State's open-file policy. In fact, as noted above, Wiley agreed to it during pre-trial proceedings.

The application for subpoena was not all the trial judge could consider in allowing Lecocke's testimony. Wiley's Intoxilyzer 5000 results were also admitted into evidence. At trial, Wiley used these results to argue that he did not meet the first prong of section 49.01(2)(A) of the penal code. *See* TEX. PENAL CODE ANN. § 49.01(2)(A) (Vernon 2008). As the State suggests, the use of an expert witness to testify as to the meaning of the Intoxilyzer 5000 results may be reasonably expected. Therefore, by accepting the State's open-file policy agreement, Wiley implicitly agreed that there was an obligation on his part to review the file. Wiley cannot now argue that it is unconscionable to ask him to review the State's file. The trial court did not abuse its discretion when it held that the State's open-file policy, in conjunction with the subpoena, was sufficient notice of Lecocke's

6

testimony.  We overrule Wiley's first issue.

### III. LEGAL AND FACTUAL SUFFICIENCY

By his second issue, Wiley contends that the evidence was legally and factually insufficient to support the verdict.

**A.    Standard of Review**

In a legal sufficiency review, the court must examine all the evidence in the light most favorable to the prosecution to determine whether any rational tier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Sanders v. State*, 119 S.W.3d 818, 820 (Tex. Crim. App. 2003).  In a factual sufficiency review, we view the evidence in a neutral light.  *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  For an appellate court to order a new trial based on factual insufficiency, there must be some objective basis in the record to support a conclusion that the jury's verdict was contrary to the great weight and preponderance of the evidence.  *Id*.

**B.    Discussion**

Wiley argues that there was insufficient evidence for the jury to have concluded that he was intoxicated under the first and second prongs of section 49.01(2).  TEX. PENAL CODE ANN. § 49.01(2)(A),(B).  Section 49.01(2) defines intoxication as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; or (B) having an alcohol concentration of 0.08 or more."  *Id*.

In his appeal, Wiley argues that the first prong of section 49.01 requires that intoxication must be "by reason of the introduction of alcohol, *and* a controlled substance,"

7

suggesting that the clauses are dependent upon another. *Id.* With such a reading, Wiley argues that the State did not provide sufficient evidence to prove that Levitra and alcohol, when mixed together, cause intoxication. However, the penal code does not use the conjunctive "and," but instead uses the disjunctive "or." *See id*. § 49.01(2)(A); *City of Lubbock v. Adams*, 149 S.W.3d 820, 827 (Tex. App.–Amarillo 2004, pet. denied) (holding that "and" and "or" are usually not interchangeable.). A proper reading of the penal code demonstrates that the introduction of alcohol independently may satisfy the definition of intoxication.

Next, Wiley also argues that the State failed to prove he was intoxicated under the second prong of section 49.01(2). TEX. PENAL CODE ANN. § 49.01(2)(B). Wiley highlights the fact that the two intoxilyzer results performed at the jail were both under the 0.08 limit, and therefore, the State did not meet the elements of the second prong. However, the portable breathalyzer used at the scene showed a blood-alcohol level of 0.09. Additionally, Lecocke's explanation of retrograde extrapolation[3] could explain the discrepancies between the on-site results and the results at the jail. The jury does not need to establish Wiley's exact blood-alcohol reading at the time of his arrest; they may use a police officer's testimony to prove a defendant's intoxication. *Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994). Additionally, the record includes the video tape showing Wiley failing all three sobriety tests and his statements admitting to drinking four beers and being above the legal driving limit.

In the present case, significant evidence indicates Wiley's intoxication: Trooper

---

[3] Retrograde extrapolation is the process whereby a known concentration of alcohol taken sometime after an incident is used to determine the blood-alcohol concentration at the time of the incident. *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

Zarate's observations, Wiley's admission of drinking four beers, the videotape wherein Wiley fails all three sobriety tests, the on-site breathalyzer reading of 0.09, the results of 0.069 and 0.065 at the jail, and the retrograde extrapolation explanation provided by the expert witness. A jury may use several different factors to infer that a person was intoxicated. *State v. Mechler,* 153 S.W.3d 435, 440 (Tex. Crim App. 2005) (noting that intoxilyer results are probative without retrograde extrapolation evidence.); *see Rodriguez v State*, 191 S.W.3d 428, 438 (Tex. App.–Corpus Christi 2006, pet. ref'd) (holding that arresting officer's observation sufficient to show intoxication.). Reviewing the evidence in the light most favorable to the verdict, we hold that the evidence is such that a reasonable fact finder could have found the element of intoxication beyond a reasonable doubt. *See Sanders*, 119 S.W.3d at 820. Reviewing the evidence in a neutral light, we hold that the evidence is such that a reasonable fact finder could have found the elements of intoxication beyond a reasonable doubt and that the finding is not against the great weight and preponderance of the evidence. *See id.* Accordingly, we overrule Wiley's second appellate issue.

## IV. JURY CHARGE ERROR

By his third issue, Wiley argues that the court erred in denying his request for a jury instruction on a pre-arrest statement.

**A.      Standard of Review**

In reviewing a jury charge, the court must first examine if error exists. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). If error is found, then we consider whether an objection to the charge was made and determine whether harm occurred. *Id*. If the defendant properly objected to the erroneous jury charge, reversal is required if we

9

find "some harm" to the defendant's rights. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If the defendant did not object, we may only reverse if the record shows egregious harm. *Id.* at 743-44.

On appeal, Wiley argues that Trooper Zarate's intention to arrest him after the one-leg sobriety test gave rise to a custodial interrogation and that the trial court erred by not providing an article 38.23 instruction, which informs the jury that if any evidence was obtained by a police officer illegally, it is to disregard that evidence. *See* TEX. CODE CRIM. PROC. ANN art. 38.23 (Vernon 2005). However, as the State notes, at trial, Wiley requested an article 38.22 section 7 instruction.[4] *See* TEX. CODE CRIM. PROC. ANN art. 38.22 § 7 (Vernon 2005). Article 38.22 of the code of criminal procedure codifies both *Miranda's* system of protecting a suspect against self-incrimination and its distinction between voluntary statements and compelled confessions. *Id.*; *State v. Waldrop*, 7 S.W.3d 836, 838 (Tex. App.–Austin 1999, no pet.); *see also State v. Werlla*, No. 13-08-00185-CR, 2008 Tex. App. Lexis 9109, at *10 (Tex. App.–Corpus Christi Dec. 4, 2008, no pet.) (mem. op., not designated for publication). If statements are not made as the result of custodial interrogation, the requirements of *Miranda* and of article 38.22 do not apply. *Waldrop,* 7 S.W.3d at 839 (citing *Holland v. State*, 770 S.W.2d 56, 58 (Tex. App–Austin 1989), *aff'd*, 802 S.W.2d 696 (Tex. Crim. App. 1991)). For this reason and due to Wiley's argument under article 38.23, whether Wiley was under custodial interrogation is dispositive of this

---

[4] We do not reach the State's waiver argument because we find that no error occurred. *See Thomas v. State*, 723 S.W.2d 696, 707 (Tex. Crim. App. 1986) ("Therefore, whether appellant properly preserved any asserted jury charge error will only be relevant should we find that error actually occurred. Because we find that no error occurred, we need not decide whether appellant preserved any asserted jury charge error."); *see also Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Salahud-din v. State*, 206 S.W.3d 203, 209 n.3 (Tex. App.–Corpus Christi 2006, pet ref'd).

issue. Therefore, we will first determine whether he was under custodial interrogation, then we will determine how that impacts Wiley's jury charge complaint.

## B.    Custodial Interrogation

"Custodial interrogation" has been defined as questioning initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *Miranda* safeguards only apply when a suspect is placed in custody and interrogated by police. *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Two questions must then be resolved to determine the need for *Miranda* warnings: (1) whether the accused is actually in custody, and (2) whether there has been an interrogation.

A defendant is generally not considered to be under custodial interrogation when stopped for a traffic offense. *See Berkemer v. McCarty*, 468 U.S. 420, 441 (1984); *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997); *Abernathy v. State*, 963 S.W.2d 822, 825 (Tex. App–San Antonio 1998, pet. ref'd); *Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App–Houston [14th Dist.] 1989, no pet.). But subsequent events may cause a noncustodial encounter to escalate into a custodial interrogation. *See Berkemer*, 468 U.S. at 440; *Dowthitt v. State*, 931 S.W.2d 244, 254-55 (Tex. Crim. App. 1996).

The Supreme Court has stated an interrogation is "express questioning [or] any words or action on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response." *Russell v. State,* 215 S.W.3d 531, 535 (Tex. App.–Waco 2007, pet. ref'd) (citing *Rhode Island v. Innis*, 446 U.S. 291 (1980)). Normal questions incident to a traffic stop are not considered to be an interrogation. *See Berkemer,* 468 U.S. at 437-438. The Texas Court of Criminal Appeals has identified four

11

general situations that may amount to custody:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Arthur v. State*, 216 S.W.3d 50, 57 (Tex. App.–Fort Worth 2007, no pet.) (citing *Dowthitt*, 931 S.W.2d at 255.). Under the first through third situations, "the restrictions upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention." *Id.* Under the fourth, the officer must have manifested his knowledge of probable cause to the suspect. *Id.* "[S]ituation four does not automatically establish custody; rather, custody is established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Dowthitt*, 931 S.W.2d at 255. Manifestation occurs "if information substantiating probable cause is related by the officers to the suspect or by the suspect to the officers." *Id.*

In *Arthur*, the Fort Worth Court of Appeals recognized a situation in which a traffic stop escalated into a custodial interrogation. *See id.* (citing *Alford v. State*, 22 S.W.3d 669, 672 (Tex. App.–Fort Worth 2000, pet. ref'd)). In *Alford*, the defendant was placed on the ground and handcuffed without *Miranda* warnings prior to questioning. *Id.* Here, there is no evidence, prior to the on-site breath test and subsequent statement, that Wiley was restrained in any way similar to an arrest or that Trooper Zarate manifested his knowledge of probable cause to him. Thus, we conclude that Wiley was not under custodial interrogation at the time he made the statements in question.

1. *Article 38.22 Section 7*

12

Because Wiley's statements [were] not made as the result of custodial interrogation, the requirements of Miranda and of article 38.22 do not apply. *Waldrop,* 7 S.W.3d at 839.

2. *Article 38.23*

Arguing that he was not properly *Mirandized* prior to making the incriminating statements, Wiley asserts that the trial court was required to give an article 38.23 instruction because a contested issue was raised regarding whether Wiley should have been *Mirandized.* The Texas Code of Criminal Procedure article 38.23 provides in relevant part:

> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN art. 38.23 (Vernon 2005).

In other words, "in any case where a party raises an issue regarding whether evidence was obtained in violation of the laws of Texas or the United States, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained because of such a violation, then the jury shall disregard any such evidence." *Mendoza v. State*, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002). "When there is no conflicting testimony regarding the relevant facts, no jury instruction is required." *Estrada v. State*, 30 S.W.3d 599, 605 (Tex. App.–Austin 2000, pet. ref'd) (citing *Lackey v. State*, 638 S.W.2d 439, 455 (Tex. Crim. App. 1982)). "The only question, then, is whether, under the facts of a particular case, the evidence raises an issue under article 38.23." *Murphy v. State,* 640 S.W.2d 297, 299 (Tex. Crim. App. 1982). "Where no such issue is raised by the evidence, the trial court acts properly in refusing a request to charge the jury." *Id*.

After reviewing the record, we find that there is no conflicting testimony regarding

the relevant facts and, therefore, no jury instruction was required. *Estrada,* 30 S.W.3d at 605 (citing *Lackey*, 638 S.W.2d at 455). Wiley did not call any witnesses to controvert the point that the statement was made while under custodial interrogation or that it was not voluntary. Having already concluded that Wiley was not under custodial interrogation at the time the statement was made to Trooper Zarate, we also conclude that the statement was not illegally obtained, and Wiley did not raise a fact issue on this point. Therefore, Wiley was not entitled to an article 38.23 jury instruction. *See* TEX. CODE CRIM. PROC. ANN art. 38.23; *Murphy,* 640 S.W.2d at 299; *see also Simon v. State*, No. 11-00-00004-CR, 2000 WL 34233654, at *2 (Tex. App.–Eastland Nov. 30, 2000, no pet.) (not designated for publication) ("Because there was no custodial interrogation of appellant, he was not entitled to an Article 38.23 jury instruction."). The trial court did not err in refusing to give such an instruction. *See Murphy*, 640 S.W.2d at 299. We overrule Wiley's third issue.

## V. CONCLUSION

Having overruled Wiley's three issues, we affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 13th day of August, 2009.

14