Steven Richard HORNER, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–01–637–CR.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Feb. 19, 2004.

Opinion Concurring in Grant of
Rehearing March 3, 2004.

Rehearing Overruled April 8, 2004.

Donald Kubicek, Sinton, for appellant.

Steven Richard Horner, Abilene, pro se.

Michael Hess, Asst. Dist. Atty., Patrick L. Flanigan, Dist. Atty., Sinton, for state.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and CASTILLO.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice RODRIGUEZ.

Appellant, Steven Richard Horner, filed a motion for rehearing arguing that this Court made an error in the disposition of his fourth issue. Upon our review of the record, we grant appellant's motion for rehearing, withdraw our prior memorandum opinion and judgment of August 14, 2003, and substitute the following as the opinion of the Court.

Appellant brings this appeal following his conviction for the felony offense of aggravated sexual assault. The trial court has certified that this case "is not a plea-bargain case, and the defendant has the right of appeal." *See* Tex.R.App. P. 25.2(a)(2). Appellant contends the trial court erred by: (1) denying his motion for change of venue; (2) denying his motion to suppress evidence from State witness James Ronald Jones II; and (3) overruling his objection to the testimony of Carmela Quintanilla regarding the victim's out-of-court statement. Appellant also complains of ineffective assistance of counsel. We affirm.

## I. BACKGROUND

Appellant was indicted for the first degree felony offense of aggravated sexual assault. The case was dismissed because of the death of the victim, her sister, and her mother. Appellant was later re-indicted for the same offense. The indictment alleged appellant caused the female sexual organ of C.S., a child younger than fourteen years of age, to contact the sexual organ of appellant. After a two-day trial, the jury found appellant guilty. It assessed punishment at ninety-nine years in the Institutional Division of the Texas Department of Criminal Justice and imposed a $10,000.00 fine.

## II. MOTION FOR CHANGE OF VENUE

■ By his first issue, appellant contends the trial court erred by denying his motion for change of venue. This Court reviews motions for change of venue under an abuse of discretion standard. *Dewberry v. State,* 4 S.W.3d 735, 744 (Tex.Crim. App.1999). The Texas Code of Criminal Procedure provides that a trial court may change venue upon a showing: (1) that there exists so great a prejudice against the defendant in the county where the prosecution is commenced that he cannot obtain a fair and impartial trial; or (2) that there is a dangerous combination against the defendant instigated by influential persons, by reason of which the defendant cannot expect a fair trial. Tex.Code Crim. Proc. Ann. art. 31.03(a)(1) & (2) (Vernon 1989). A motion made under either ground must be in writing and supported by three affidavits, one from the defendant and two from credible witnesses. *See id.* art. 31.03(a).

■ At the pretrial hearing, appellant provided the court with his motion for change of venue. However, the motion did not include affidavits from two witnesses.

*See id.* The omission of these affidavits renders the motion fatally defective. *Brooks v. State,* 418 S.W.2d 835, 836 (Tex. Crim.App.1967). There is no abuse of discretion when the trial court denies a motion that does not adhere to statutory requirements. *See Christopher v. State,* 489 S.W.2d 573, 574 (Tex.Crim.App.1973); *Stuart v. State,* 456 S.W.2d 129, 131 (Tex. Crim.App.1970); *Hinkle v. State,* 442 S.W.2d 728, 733 (Tex.Crim.App.1969).

Thus, we conclude the trial court did not abuse its discretion in denying the motion for change of venue. *See Dewberry,* 4 S.W.3d at 744. Appellant's first issue is overruled.

### III. MOTION TO SUPPRESS

■ By his second issue, appellant contends the trial court erred by denying his motion to suppress evidence provided by State's witness James Ronald Jones II. In his motion, appellant contended the State delayed disclosing Jones as a witness and the delay did not allow him sufficient time to properly prepare voir dire argument and cross examination. On March 5, 2001, appellant filed a motion entitled "Motion for Disclosure of Witness Names." The order granting the motion directed the State to provide such names no later than 5:00 p.m. on March 16, 2001. Jones was not disclosed as a witness until July 5, 2001. The State claims that the witness was not known until May. The State further asserts that his identity was not disclosed until July 5 because the witness was assisting the State with another investigation regarding appellant.

■ Upon request by the defense, notice of the State's witnesses should be given. *Stoker v. State,* 788 S.W.2d 1, 15 (Tex.Crim.App.1989) (citing *Young v. State,* 547 S.W.2d 23, 27 (Tex.Crim.App. 1977)). If the trial court allows an undisclosed witness to testify, we review the decision for abuse of discretion. *Castaneda v. State,* 28 S.W.3d 216, 223 (Tex.App.-El Paso 2000, pet. ref'd) (citing *Stoker,* 788 S.W.2d at 15); *Irvine v. State,* 857 S.W.2d 920, 926 (Tex.App.-Houston [1st Dist.] 1993, pet. ref'd). In determining whether the trial court abused its discretion, this Court should consider whether: (1) the prosecutor acted in bad faith in failing to provide the defense with the name of the witness; and (2) the defendant could reasonably anticipate that the witness would testify despite the State's failure to disclose the witness's name. *See Stoker,* 788 S.W.2d at 15; *Castaneda,* 28 S.W.3d at 223; *Irvine,* 857 S.W.2d at 927. In determining whether the State acted in bad faith in failing to provide the name of the witness, we consider whether the State intended to deceive, whether the State's notice left adequate time to prepare, and whether the State freely provided the defense with information. *See Hardin v. State,* 20 S.W.3d 84, 88 (Tex.App.-Texarkana 2000, pet. ref'd); *see also Stoker,* 788 S.W.2d at 15.

■ Here, although the State waited some time after discovering the witness to disclose his name to appellant, it does not appear to have been done with the intent to deceive. *See Hardin,* 20 S.W.3d at 88. The State delayed disclosure to protect another investigation and to allow for the witness to be transported to another facility. *See id.* Also, although the State did not disclose the identity of the witness until July 5, 2001, the trial did not begin until August 13, 2001. Thus, appellant had adequate time to prepare. *See id.* Furthermore, the State was willing to provide appellant with information that could be used to impeach the witness and with the terms of the State's agreement with the witness. *See id.* We find no showing of bad faith by the State.

We next consider whether the defendant could reasonably anticipate that the witness would testify for the State. *Stoker*, 788 S.W.2d at 15. The record shows Jones was assisting the State with another investigation regarding Horner. Appellant and Jones were inmates at the same correctional facility. They had no prior relationship and did not maintain a relationship after their incarceration. Furthermore, the record supports that the investigation was confidential and covert, thus, the defendant could not have reasonably anticipated that the witness would be called to testify. However, the record does not show there was a significant degree of disadvantage inherent in the surprise, if any, resulting from the State's late disclosure. *See id.* Counsel was informed on July 5, 2001 of the State's intent to call Jones and was given the scope of his testimony prior to trial. The trial court remedied any surprise to appellant by granting a continuance. *See id.* Voir dire began August 13, 2001, over a month after appellant was provided with the witness's identification.

Thus, we find the trial court did not abuse its discretion in refusing to suppress the witness's testimony. Appellant's second issue is overruled.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, appellant contends he was not afforded effective assistance of counsel. The United States Supreme Court and the Texas Court of Criminal Appeals have promulgated a two-prong test to determine whether representation was so inadequate that it violated a defendant's sixth amendment right to counsel. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State*, 726 S.W.2d 53, 54–55 (Tex.Crim.App.1986);

*Munoz v. State*, 24 S.W.3d 427, 433 (Tex. App.-Corpus Christi 2000, no pet). To establish ineffective assistance of counsel, appellant must show: (1) his attorney's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Stone v. State*, 17 S.W.3d 348, 349–50 (Tex. App.-Corpus Christi 2000, pet. ref'd). Appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *See Munoz*, 24 S.W.3d at 434; *Stone*, 17 S.W.3d at 350. An allegation of ineffective assistance of counsel will be sustained only if it is firmly founded and the record affirmatively demonstrates counsel's alleged ineffectiveness. *Guzman v. State*, 923 S.W.2d 792, 797 (Tex.App.-Corpus Christi 1996, no pet.). In assessing a claim of ineffective assistance of counsel, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001). Also, in the absence of evidence of counsel's reasons for the challenged conduct, an appellate court will assume a strategic motivation and will not conclude the conduct was deficient unless the conduct was so outrageous that no competent attorney would have engaged in it. *See id.; Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999). Finally, an appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong. *Garcia*, 57 S.W.3d at 440.

Appellant contends his trial counsel was ineffective in: (1) failing to properly object to responses of venire members; (2) failing to file a statutorily sufficient motion for change of venue; and (3) failing to preserve evidence of prejudicial print and me-

dia coverage for the motion for change of venue.

Appellant urges that his trial counsel's failure to object to responses of venire members resulted in the voir dire process being tainted. The record shows that trial counsel did not object to responses made by the venire members. However, he did use his challenges to ensure all commenting venire members were eventually stricken for cause. In the absence of evidence showing counsel's reasons for the challenged conduct, we assume a strategic motivation and will not conclude that the conduct was deficient. *See Garcia*, 57 S.W.3d at 440. Furthermore, appellant has not proven by a preponderance of the evidence that the responses tainted the voir dire process. *Munoz*, 24 S.W.3d at 434.

Appellant next challenges trial counsel's action regarding his motion for change of venue. Specifically, appellant complains trial counsel was ineffective because he failed to attach the affidavits of two witnesses to his motion for change of venue as required by article 31.03(a) of the code of criminal procedure. Tex.Code Crim. Proc. Ann. art. 31.03(a)(Vernon 1989). Appellant correctly asserts the motion was defective and failed to comply with the statutory requirements. However, appellant provides no evidence that his trial counsel would have been able to obtain two credible individuals willing to sign affidavits on his behalf or that the affidavits would have provided information sufficient to warrant a change of venue. Therefore, appellant did not prove by a preponderance of the evidence that the trial court would have granted the motion for the change of venue if the affidavits had been properly filed. *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Munoz*, 24 S.W.3d at 434.

Finally, appellant claims trial counsel was ineffective because he failed to preserve evidence of prejudicial print and media broadcast coverage. However, appellant has not presented evidence of the alleged extensive prejudicial print and media broadcast coverage. *See Munoz*, 24 S.W.3d at 434. To the contrary, the record reveals only one newspaper article, and it was written over a year before jury selection. In the absence of evidence showing counsel's reasons for the challenged conduct, we will assume a strategic motivation and will not conclude the conduct was deficient. *See Garcia*, 57 S.W.3d at 440. Thus, the record fails to affirmatively demonstrate counsel's alleged ineffectiveness. *See Guzman*, 923 S.W.2d at 797.

We conclude appellant was not denied effective assistance of counsel. Appellant's third issue is overruled.

## V. OUT–OF–COURT STATEMENT

By his fourth issue, appellant argues that the out-of-court statement of C.S., the victim, does not fall within the medical diagnosis or treatment exception to the hearsay rule. *See* Tex.R. Evid. 803(4). Appellant further contends the admission of the statement violated his confrontation rights. *See* U.S. Const. amends. VI & XIV; Tex. Const. art. I, § 10.

### A. Standard of Review

This Court reviews the trial court's decision to admit or exclude evidence under the abuse-of-discretion standard. *See Green v. State*, 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996). We will not reverse a trial court if its ruling is within the "zone of reasonable disagreement." *Id.* at 102.

### B. Medical Diagnosis/Treatment Hearsay Exception

■ During the course of the trial, appellant's attorney requested a hearing outside the presence of the jury to consider the admissibility of hearsay testimony to be offered by the State's witness, Carmela Quintanilla, a social worker at Driscoll Hospital.[1] Appellant objected that Quintanilla's testimony regarding C.S.'s out-of-court statement did not fall within the medical diagnosis or treatment exception to the hearsay rule. *See* Tex.R. Evid. 803(4). The court overruled appellant's objection. By receiving an adverse ruling on his objection made outside the presence of the jury, appellant preserved any error the trial court may have committed in allowing Quintanilla to testify regarding C.S.'s statements on the basis of rule 803(4). *See* Tex.R. Evid. 103(a)(1) (exception to contemporaneous objection to preserve error includes objection made to evidence outside presence of jury). Therefore, this hearsay issue is properly before us for review.

■ Under rule of evidence 803(4),

[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, are admissible and excluded from the hearsay rule.

Tex.R. Evid. 803(4). This exception is "based on the assumption that the patient appreciates that the effectiveness of the treatment may depend on the accuracy of the information provided...." *Moore v. State,* 82 S.W.3d 399, 403 (Tex.App.-Austin 2002, pet. ref'd); *see Fleming v. State,* 819 S.W.2d 237, 247 (Tex.App.-Austin 1991, pet. ref'd). The following two-part test has been set out for admitting a statement under this exception: (1) the declarant must make the statement for the purpose of receiving treatment; and (2) the content of the statement must be such as is reasonably relied on by a health care professional in treatment or diagnosis. *Jones v. State,* 92 S.W.3d 619, 623 (Tex.App.-Austin 2002, no pet.). To satisfy the first prong of the test, the declarant must have a motive consistent with obtaining medical care, knowing that proper diagnosis or treatment depends on the veracity of such statements. *Id.* To meet the second prong, the statement must concern facts "reasonably pertinent to diagnosis or treatment," such as medical history, symptoms, or the cause or general character of the cause or external source. *Id.*

Eight-year-old C.S. was taken to her pediatrician because of a sudden lack of bladder control and unusual vaginal discharge. Her pediatrician suspected sexual abuse and referred C.S. to the general pediatric unit at Driscoll Children's Hospital (Driscoll Hospital). Dr. W. Jerry Reed, Director of Behavioral Developmental Services and Adolescent Medicine, examined C.S. in the presence of C.S.'s mother, Dr. Reed's partner, a resident, and a nurse or nurses. C.S. freely discussed topics of a general nature with Dr.

---

1. The trial court denied appellant's pretrial motion to suppress the admission of a psychological assessment for suspected child abuse completed by social worker Carmela Quintanilla. In his motion, appellant argued the document did not fall under either the medical diagnosis or treatment exception or the medical records exception to the hearsay rule. *See* Tex.R. Evid. 803(4), 803(6). Appellant also urged that such admission was unconstitutional because his right to confront and cross-examine the alleged victim was denied. However, since the admission of the psychological assessment is not at issue in this appeal, we will not address it in our analysis.

Reed, including, her name, address, and favorite color, but refused to describe her symptoms. Dr. Reed explained that because young girls are often intimidated by "a big fat guy like [himself]," after finishing with a physical examination, social workers from the hospital take the patient's history, as occurred in this case.

After Dr. Reed and a nurse completed the physical examination, C.S. and her mother were taken to meet with Quintanilla in her office, located in the same building and on the same floor as Dr. Reed's office. Quintanilla told C.S. that, as part of the team, she "was just to find out why [C.S.] was there" and "that Doctor Reed—that we would take care of her, and that she hadn't done anything wrong...." Quintanilla believed C.S. understood Quintanilla's purpose in talking with her. C.S. understood it was intended to help her situation. During the course of the twenty-five minute interview, Quintanilla asked C.S. if anybody had touched her. C.S. did not answer, and appeared upset. Quintanilla told C.S. she did not have to talk, and asked if she would rather write it down. C.S. agreed and wrote appellant's name on a piece of paper. Quintanilla recounted this statement to the jury. Over appellant's objections, the court admitted the testimony.

Quintanilla further testified that after C.S. wrote appellant's name on the paper:

> [s]he began to cry, then she began to talk. She said that Steven Horner had [touched] her when her mother had an accident, and when her mother was at work. She stated that her mother worked late, and so it happened at home when her mother was at work.... She stated that he did it in November and maybe since July. From my notes I could tell she said, 'He does it when mom is at work, and mom gets home after nine o-clock. It hurts when he does it.'

C.S. did not elaborate as to what "it" was, but Quintanilla's understanding was that the child was there because of sexual assault or abuse.

Quintanilla further testified that during the course of an interview, if someone is identified who would hurt the child at home,[2] she makes a referral to Children's Protective Services (CPS). Quintanilla did so in this case. She also contacted Detective Sergeant Rick Brooks of the Aransas Pass Police Department. That same night, Sergeant Brooks interviewed C.S. and her mother. Shortly thereafter appellant was arrested.

At the time of trial, Quintanilla had been employed as a medical social worker at Driscoll Hospital for seven years. She held a bachelor's degree in sociology, and was a graduate student studying in the area of social work. Quintanilla held a license in social work, and her requirements for maintaining her license were current. Quintanilla explained she was part of the treatment team at the clinic. The treatment team consisted of the doctor and nurse, the patient's guardian, and the social worker. Quintanilla's role on the team was to get a family/social history on the patient. The purpose of the social history was to assess the physical safety of the child at home.[3]

---

**2.** During this period of time, C.S. lived with her mother, sister, and Horner, who was her mother's boyfriend.

**3.** We further note that before Quintanilla testified at trial and outside the presence of the jury, the trial court permitted the State to lay the proper predicate for Quintanilla's testimony under rule 803(4). In addition to what has been set out above, Quintanilla informed the court that it was her understanding that the procedures instituted by Dr. Reed for the performance of sexual assault examinations, including his physical examination and her

On cross-examination, Quintanilla testified that she did not discuss with C.S. the importance of telling the truth. She did not clarify with C.S. whether the hurt she was asking about was physical or emotional hurt. Although C.S. identified home as where the events occurred, she did not tell Quintanilla where home was. Quintanilla did not ask C.S. where she was touched or whether she had her clothes on when she was touched.

■ Appellant specifically contends C.S.'s hearsay statements were not admissible at trial because Quintanilla was not a doctor.[4] However, "Texas courts have allowed non-physicians to testify under the medical diagnosis and treatment exception to hearsay." *Gregory v. State*, 56 S.W.3d 164, 182–83 (Tex.App.-Houston [14th Dist.] 2001, pet. dism'd), *cert. denied*, 538 U.S. 978, 123 S.Ct. 1787, 155 L.Ed.2d 667 (2003) (citing *Puderbaugh v. State*, 31 S.W.3d 683, 685 (Tex.App.Beaumont 2000, pet. ref'd) (allowing clinical social worker to testify under rule 803(4)); *Gohring v. State*, 967 S.W.2d 459, 461 (Tex.App.-Beaumont 1998, no pet.) (allowing play therapist, under supervision of licensed psychologist, to testify child was abused by her father); *Moyer v. State*, 948 S.W.2d 525, 527–28 (Tex.App.-Fort Worth 1997, pet. ref'd) (concluding statements made by patient to paramedic were admissible); *Macias v. State*, 776 S.W.2d 255, 258–59 (Tex.

App.-San Antonio 1989, pet. ref'd) (statements made to psychologist admissible because they were made for purpose of medical diagnosis and treatment); *Torres v. State*, 807 S.W.2d 884, 886–87 (Tex.App.-Corpus Christi 1991, pet ref'd) (finding emergency room nurse could testify as to victim's statement even though nurse was also collecting evidence)). Likewise, Quintanilla's status as a social worker does not disqualify her testimony.

■ Moreover, under the facts of this case, Quintanilla's qualifications do establish her connection with the medical profession. Driscoll Hospital employed Quintanilla as a medical social worker. She had been employed in that capacity for seven years. Quintanilla held a bachelor's degree in sociology and was a graduate student in the area of social work. She was licensed as a social worker. Quintanilla explained she assessed children for child abuse as part of the treatment team, which consisted of the doctor and nurse, the patient's guardian, and the social worker. Quintanilla obtained a social history on the patient, the purpose of which was to assess the physical safety of the child at home. Furthermore, Quintanilla testified she interviewed C.S. only a short time after Dr. Reed completed the physical examination. The interview room was down the hall from the examination room. Based on this testimony, we conclude the trial court

---

evaluation, were done in every case. Quintanilla agreed that this process is pertinent to both the diagnosis and treatment, with treatment meaning protecting the child later. Quintanilla testified that C.S. appeared to be trying to answer truthfully and did not appear evasive or inconsistent in her responses. After hearing Quintanilla's testimony outside the jury's presence, the court allowed her to testify under the medical diagnosis exception, but only as to C.S.'s statements and as to the questions Quintanilla asked C.S.

4. Relying on *Ring v. Erickson*, 983 F.2d 818, 820 (8th Cir.1993), appellant also contends the statement should not have been admitted because: (1) the victim did not herself seek the doctor's help; and (2) there was no evidence that she even knew she was talking to a doctor. *See id.* However, in accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities and to the record. Tex.R.App. P. 38.1(h). Because these contentions are inadequately briefed, we will not address them on appeal.

could have reasonably determined that the evidence established a medical care component as required by rule 803(4). *See* TEX.R. EVID. 803(4); *cf. Gohring*, 967 S.W.2d at 461–64 (statements of CPS investigator not admissible absent showing of medical care component to worker's employment of which declarant is aware).

Additionally, Quintanilla told C.S. she wanted to find out why C.S. was there. She also told C.S. they would take care of her. Quintanilla believed C.S. understood her purpose in talking with her, that it was intended to help her situation. The court could have concluded C.S. made the statement to Quintanilla for the purpose of receiving treatment to help her situation. *See Jones*, 92 S.W.3d at 622. The court could also have determined that C.S. appreciated that the effectiveness of the treatment depended on the accuracy of the information she provided. *See Moore*, 82 S.W.3d at 403. Accordingly, the first prong of the test has been satisfied. *See Jones*, 92 S.W.3d at 623.

The second prong addresses the crucial issue of whether the out-of-court statement was reasonably pertinent to medical diagnosis or treatment. *See id; Gregory*, 56 S.W.3d at 183 (citing *Ziegler v. Tarrant County Child Welfare Unit*, 680 S.W.2d 674, 680 (Tex.App.-Fort Worth 1984, writ ref'd n.r.e.)). "Texas courts have held that statements by a suspected victim of child abuse as to the causation and source of the child's injuries are admissible under rule 803(4)." *Gregory*, 56 S.W.3d at 183 (citing *Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.-Fort Worth 1999, pet. ref'd); *Torres*, 807 S.W.2d at

887). "[U]nlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is pertinent to the medical treatment of the child." *Fleming*, 819 S.W.2d at 247 (citations omitted). Therefore, we conclude the child's statements to Quintanilla identifying her abuser were reasonably pertinent to medical treatment. The second prong of the test is satisfied. *See Jones*, 92 S.W.3d at 622. Quintanilla's testimony, specifically that testimony related to C.S.'s statements, was properly admitted pursuant to rule 803(4).

## C. Right of Confrontation

Appellant also challenges the admission of Quintanilla's testimony on the basis that it violates his constitutional right of confrontation under the Sixth and Fourteenth Amendments of the United States Constitution and article 1, section 10 of the Texas Constitution. *See* U.S. CONST. amends. VI & XIV; TEX. CONST. art. I, § 10. The State contends appellant waived this objection because he did not make it during the hearing outside the presence of the jury, *see* TEX.R. EVID. 103(a)(1), and did not request permission from the trial court for a running objection.[5] *See Sattiewhite v. State*, 786 S.W.2d 271, 283 n. 4 (Tex.Crim.App.1989). We agree that appellant did not preserve error on constitutional grounds. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App. 1990) (even constitutional error may be waived).

However, even assuming appellant preserved this objection, not all

---

5. During the course of the trial, appellant objected, on constitutional grounds, to Quintanilla's testimony regarding C.S.'s written statement. He did not make this objection, however, when Quintanilla subsequently testified that after C.S. wrote Horner's name on the paper C.S. told her Horner touched her when her mother had an accident and when her mother was at work in November and maybe since July, and that it hurt when he did it.

out-of-court statements are prohibited by the confrontation clause. *Edwards v. State,* 107 S.W.3d 107, 115 (Tex.App.-Texarkana 2003, no pet.) (citing *Idaho v. Wright,* 497 U.S. 805, 813–14, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). If the statement falls within a firmly rooted hearsay exception, reliability can be inferred without more. *Id.; see Simpson v. State,* 119 S.W.3d 262, 269 (Tex.Crim.App.2003) (statement is *per se* reliable if falls within "firmly rooted" exception to hearsay rule). The exception for a statement made for purposes of medical diagnosis or treatment is "firmly rooted." *Edwards,* 107 S.W.3d at 115 (citing *White v. Illinois,* 502 U.S. 346, 356 n. 8, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992)). Thus, the admission of the testimony under the medical diagnosis or treatment hearsay exception did not violate appellant's right of confrontation.

Accordingly, we conclude the trial court's ruling was within the "zone of reasonable disagreement." *See Green,* 934 S.W.2d at 101–02. As such, the court did not abuse its discretion when it admitted C.S.'s out-of-court statements through Quintanilla's testimony. *See id.* Appellant's fourth issue is overruled.

## VI. CONCLUSION

Having addressed all issues in this appeal, we affirm the judgment of the trial court.

Separate Opinion on Motion for Rehearing by Justice CASTILLO.

CASTILLO, Justice, concurring on motion for rehearing.

I concur with the result of the majority opinion. The majority withdrew our original opinion particularly to address the merits of an issue asserted in a brief Horner filed pro se to supplement the brief his court appointed appellate counsel filed on his behalf. Respectfully, I would hold that Horner has presented nothing for appellate review in his fourth issue presented.

Horner requested and was granted court appointed counsel to represent him on appeal. His counsel filed a brief in the case. Horner has not clearly and unequivocally asserted his right to represent himself on appeal. Thus, court appointed counsel remains the attorney of record in this appeal. There is no right to hybrid representation. *Rudd v. State,* 616 S.W.2d 623, 625 (Tex.Crim.App.1981). Accordingly, I would hold that Horner is not entitled to hybrid representation on appeal. The pro se brief presents nothing for review. *Id.* Without reaching or addressing the merits of Horner's supplemental issue, on this record I would also vacate as improvidently granted any order allowing him hybrid representation.