NUMBER 13-10-00365-CR

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT
OF TEXAS

 

CORPUS CHRISTI–EDINBURG  

                                                                                                                     


 

CLARENCE MARTIN,                                                                             Appellant, 

 

  v.

 

THE STATE OF TEXAS,                         
                        Appellee.

                                                                                                                     
  

 

On appeal from the 130th
District Court 

of Matagorda County,
Texas

                                                                                                                     


 

MEMORANDUM OPINION

 

Before Justices Garza,
Vela, and Perkes   

Memorandum Opinion by
Justice Perkes  

 

            Appellant, Clarence Martin, appeals his
conviction for aggravated assault with a deadly weapon, a first-degree felony. 
See Tex. Penal Code Ann. §
22.02 (West 2005).  After a jury trial on guilt-innocence, the trial court
assessed punishment at seventy-five years of confinement in the Texas
Department of Criminal Justice.  By two issues, appellant argues:  (1) the
evidence is legally insufficient to sustain his conviction; and (2) the trial
court erred by admitting evidence of his “Aryan Brotherhood” gang affiliation during
the guilt-innocence phase of trial.  We affirm. 

i. 
factual and procedural background

 

            One night in February 2007, appellant rented
a motel room in Bay City, Texas.  Overnight, appellant had four or five guests
come to the room to “party,” the term party being a euphemism for using crack
cocaine.  As check-out time approached, appellant and three of his guests were
the only remaining occupants of the room.  Appellant decided he would travel to
San Antonio with two of his guests, Michael and Michael’s girlfriend.  This
left one remaining guest, Darryl (the “complainant”), who was asleep or “passed
out” on one of the beds in appellant’s motel room.  

            After appellant, Michael, and Michael’s
girlfriend loaded their possessions into the car, appellant and Michael
returned to the motel room.  Michael’s girlfriend waited in the car.  Michael
could not wake the complainant.  Appellant told Michael, “I got this.  I’ll get
him up,” and proceeded to stab the complainant with a knife while the complainant
was sleeping.

            The complainant testified that he awoke as
appellant stabbed him.  The complainant testified that appellant said, “I got
something for that mother f---er,” and then proceeded to cut him many more
times without saying anything.  Appellant stabbed the complainant behind the
neck, on the right side of his cheek, elsewhere on the face, and cut one of his
eyes.  Appellant cut the complainant’s jaw “all the way through,” requiring the
subsequent removal of all of the complainant’s teeth.  

            Due to massive blood loss, the complainant
suffered a stroke.  As a result of the stabbing, at the time of trial, the
complainant had a paralyzed hand, a limited range of motion in one arm, speech
and cognitive difficulties, and abnormal right leg function, requiring the
complainant to walk with a cane.  The complainant was hospitalized for a month
as a result of his injuries and spent six months in a nursing home.  With
physical therapy, the complainant regained the ability to walk.  

            Michael and the complainant were friends
before the stabbing and remained friends afterward.  Michael told appellant not
to stab the complainant.  Michael testified appellant “was slashing” the
complainant and that when the appellant pulled the knife out of the
complainant, he would not pull it straight out.  “He would pull it like he was
causing damage.”  Michael did not think the complainant would survive the
stabbing.  Sergeant Chris Crummett of the Bay City Police Department was the
first policeman to arrive at the motel in response to a 911 call.  Crummett
testified the complainant’s injuries were very, very serious and that he
thought the complainant would die.  

            At the motel, before being rushed away for medical
attention, the complainant described the perpetrator to police as a white male,
covered in tattoos, who was “five foot, eight plus.”  The complainant told
police at the scene he did not know the perpetrator’s name.  The complainant
readily identified appellant as the perpetrator in a photograph line-up and
testified at trial he will never forget appellant’s face.  The complainant
testified he met appellant the night before the stabbing and that he did not
learn appellant’s name until his mother read it in a newspaper article about
the stabbing.  Michael and the complainant both testified there was no apparent
motive for appellant to stab the complainant. 

            Appellant gave police three different
versions of what had transpired:  (1) that appellant was not at the scene when
the complainant was stabbed; (2) other people were in and out of the motel room
and could have stabbed the complainant; and (3) Michael stabbed the complainant
while appellant stood at the door of the motel room.  DNA evidence on appellant’s
pants matched the complainant’s DNA, to an extremely high degree of certainty. 
Though it was of poor quality, surveillance video from the motel corroborated
the witness testimony that appellant and Michael were in the room at the time
of the stabbing, with appellant running out of the room before Michael exited
the room.  

            Over appellant’s character
and timeliness objections at trial, the trial court admitted the State’s
evidence of gang affiliation offered to show appellant’s motive and identity. 
Appellant argued the evidence was character evidence that would not be
admissible until the punishment phase of trial.  The gang-affiliation evidence consisted
of appellant’s statement during booking at the Matagorda County Jail that he
was a member of the Aryan Brotherhood and did not want to be jailed with any
black people.  The evidence also included photographs of tattoos on appellant’s
stomach and legs that included a large swastika and lightning bolts.  A witness
for the State testified the lightning bolts were an insignia of Nazi “S.S.”
culture and briefly described supremacists’ tattoos.  The complainant was a
black man.  

 

ii.  Standard of review

            When conducting a legal sufficiency review, a
court must ask whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt—not whether it
believes the evidence at trial established guilt beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.); Laster v. State, 275 S.W.3d
512, 517 (Tex. Crim. App. 2009) (quoting Jackson v. Virginia, 443 U.S.
307, 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).  In doing so, we assess
all of the evidence in the light most favorable to the prosecution.  Laster,
275 S.W.3d at 517 (quoting Jackson, 443 U.S. at 319).  We must
presume that the fact finder resolved any conflicting inferences in favor of
the prosecution and defer to that resolution.  Jackson, 443 U.S. at 326.

            We review a trial court's decision to admit
or exclude evidence for an abuse of discretion.  Green v. State, 934
S.W.2d 92, 101–02 (Tex. Crim. App. 1996); Horner v. State, 129 S.W.3d
210, 216 (Tex. App.—Corpus Christi 2004, pet. denied).  Where the trial court's
evidentiary ruling is within the “zone of reasonable disagreement,” there is no
abuse of discretion and we will uphold the trial court's ruling.  Santellan
v. State, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997); Green, 934
S.W.2d at 102; Horner, 129 S.W.3d at 216.

III.   ISSUES AND analysis

A.    Sufficiency
of the Evidence

            By his first issue, appellant argues the
evidence was legally insufficient to convict him of aggravated assault with a
deadly weapon.  Appellant emphasizes the evidence allegedly does not show he
threatened the complainant and thus there is a reasonable doubt as to whether
he intentionally, knowingly, and recklessly caused the complainant bodily
injury.  Appellant also argues the evidence is legally insufficient to show he
used a deadly weapon and points out the knife used to stab the complainant was
never found. 

We measure the sufficiency of the
evidence by the elements of the offense as defined by a hypothetically correct
jury charge.  Villarreal v. State, 286
S.W.3d 321, 327 (Tex. Crim. App.  2009) (citing Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997)).  Such a charge is one that accurately
sets out the law, is authorized by the indictment, does not unnecessarily
increase the State’s burden of proof, or unnecessarily restrict the State’s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Id.  A person
commits the offense of assault if that person intentionally, knowingly, or
recklessly causes bodily injury to another.  Tex.
Penal Code Ann. § 22.01(a)(1) (West 2005).[1]
 The offense is an aggravated assault if the person committing the assault uses
a deadly weapon during the commission of the assault.  Id.  §
22.02(a)(2).  A deadly weapon is defined as “a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious
bodily injury” or “anything that in the manner of its use or intended use is
capable of causing death or serious bodily injury .”  Id. § 1.07(a)(17).

            A
knife is not a deadly weapon per se or by design. See Thomas v. State,
821 S.W.2d 616, 619–20 (Tex. Crim. App. 1991).  A knife becomes a deadly weapon
if its use or intended use renders it capable of causing death or serious
bodily injury.  See Tex. Penal
Code Ann. § 1.07(a)(17)(B); McCain v. State, 22 S.W.3d 497, 503
(Tex. Crim. App. 2000).  We consider whether there is sufficient evidence to show the actor
used the knife or intended to use the knife in such a way that it was “capable
of causing death or serious bodily injury.” Alvarez v. State, 566 S.W.2d
612, 614 (Tex. Crim. App. 1978).  Whether a particular knife is a deadly weapon
by design, a deadly weapon by usage, or not a deadly weapon at all depends on
the evidence of each individual case.  Thomas, 821 S.W.2d at 620.  Factors
considered in determining whether a knife is a deadly weapon in its use or
intended use include:  (1) dimensions of the knife, (2) manner of its use or
intended use, (3) nature or existence of inflicted wounds, and (4) testimony of
the knife's life-threatening capabilities, if used.  Id. at 619.  

            After reviewing the evidence, we conclude a
rational jury could have found beyond a reasonable doubt that appellant
committed aggravated assault with a deadly weapon.  See Jackson, 443
U.S. at 326.  Even if we assume, without deciding, the State was
required to prove a threat, Appellant’s complaint the evidence does not show he
threatened the complainant is moot in light of the complainant’s testimony that
appellant said, “I got something for that mother f---er,” and then proceeded to
stab the complainant multiple more times.  Based on the evidence of the
severity of the complainant’s injuries and how appellant used the knife, there
is no doubt the knife in this case was a deadly weapon.  See McCain, 22
S.W.3d at 497 (finding evidence sufficient to support conclusion butcher knife
was deadly weapon).  Appellant’s first issue is overruled.

B.  
 Admission of Evidence of Appellant’s Gang Affiliation

            By his second issue on appeal, appellant
argues the trial court erred by admitting evidence he was a member of the Aryan
Brotherhood during the guilt-innocence phase of trial.  On appeal, appellant
argues the evidence was inadmissible under Texas Rules of Evidence 401 (definition
of relevant evidence), 403 (exclusion of relevant evidence), 404
(inadmissibility of character evidence), and 405 (methods of proving character). 
See Tex. R. Evid. 401,
403–05.  The gang-affiliation evidence consisted of appellant’s statement
during booking at the Matagorda County Jail that he was a member of the Aryan
Brotherhood and that he did not want to be jailed with any black people.  The
evidence also included photographs of tattoos on appellant’s stomach and legs
that included a large swastika and lightning bolts.        

            While evidence of other crimes, wrongs, or
acts is inadmissible to prove the character of a person in order to show action
in conformity therewith, it may be admissible for other purposes such as proof
of motive.  Tex. R. Evid.
404(b).  Though motive is not an element of aggravated assault with a deadly
weapon, the prosecution may offer evidence to show motive for the commission of
the offense because it is relevant as a circumstance to prove the commission of
the offense.  See Crane v. State, 786 S.W.2d 338, 349–50 (Tex. Crim.
App. 1990).  Once the opponent of extraneous-acts evidence raises an
appropriate character-evidence objection, the proponent of the evidence must
satisfy the trial court that the evidence has relevance apart from proving
character conformity.  Johnston v. State, 145 S.W.3d 215, 220 (Tex.
Crim. App. 2004); Lopez v. State, 200 S.W.3d 246, 252 (Tex. App.—Houston
[14th Dist.] 2006, pet. ref’d.) (citing Montgomery v. State, 810 S.W.2d
372, 387 (Tex. Crim. App. 1991) (op. on reh’g)).

            After the State offered appellant’s statement
and photographs of his tattoos, showing Aryan Brotherhood affiliation, appellant
objected on the grounds that they were inadmissible at the guilt-innocence
phase of trial because they constituted character evidence.  See Tex. R. Evid. 404, 405.  The State
countered contending the evidence was relevant to show appellant’s motive for
stabbing the complainant and to clarify the identity of the perpetrator.  This
evidence is the only evidence of motive in the record. Because the evidence
raises an inference that appellant’s motive in stabbing the complainant was to
harm him because of his race, the trial court did not err in admitting the
evidence for the purpose of showing motive.  See Vasquez v. State, 67
S.W.3d 229, 239–40 (Tex. Crim. App. 2002) (allowing “Mexican Mafia” evidence to
show motive); McCallum v. State,
311 S.W.3d 9, 15–16 (Tex. App.—San Antonio 2010, pet. ref’d.) (holding
probative value of “Aryan Brotherhood” affiliation evidence to show motive for
seemingly unprovoked attack outweighed danger of unfair prejudice); Garcia
v. State, No. 13-97-458-CR, 1998 WL 34202279  at *6 (Tex. App.—Corpus
Christi Aug. 13, 1998, no pet.) (mem. op.) (not designated for publication) (discussing
“Tri-City Bombers” gang-affiliation evidence). 

            Further, appellant gave multiple versions of
what happened that day, one in which he denied having been at the hotel when
the complainant was stabbed.  During the trial, appellant’s counsel made repeated
attempts to discredit the complainant’s memory regarding appellant’s identity. 
We conclude the evidence was also admissible to prove identity.  Tex. R. Evid. 404 (b); see Lane v.
State, 933 S.W.2d 504, 519 (Tex. Crim. App. 1996) (discussing admissibility
of extraneous offenses to show identity); Arias v. State, No.
04-09-00571-CR, 2010 WL 5541118 at *5–6 (Tex. App.—San Antonio Dec. 29, 2010,
pet. ref’d.) (mem. op.) (not designated for publication) (holding
photographs of gang-related tattoos admissible in showing identity).

            We do not reach appellant’s complaints under
Texas Rules of Evidence 401 and 403 because these complaints were not made in
the trial court and thus have not been preserved for review.  See Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); Johnston,
145 S.W.3d 220 n.13 (holding a rule 404(b) objection does not preserve error
for a rule 403 complaint); Santellan v. State, 939 S.W.2d 155, 169 (Tex.
Crim. App. 1997) (same); Montgomery, 810 S.W.2d at 388 (same).  Appellant’s
second issue is overruled.                   

IV. 
 conclusion

            We affirm the trial court’s judgment.        

 

                                                                                         ______________________

                                                                                         Gregory
T. Perkes

                                                                                         Justice

 

Do not publish.  Tex.
R. App. P. 47.2(b).

 

Delivered and filed the

21st day of July 2011.









[1]  The indictment in this case charged
the mental state in the conjunctive, alleging appellant “intentionally,
knowingly, and recklessly” caused bodily injury.  The jury charge tracked the
assault statute and set forth the mental state in the disjunctive:  “intentionally,
knowingly, or recklessly.”  We note appellant has not complained about this on
appeal and the distinction does not affect our analysis.  See Zanghetti v.
State, 618 S.W.2d 383, 387–88 (Tex, Crim. App. 1981).  Further, on the
record in this case, we cannot conclude the evidence is insufficient to support
a finding that appellant acted intentionally, knowingly, and recklessly.