

# NUMBER 13-22-00493-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE MANUEL AVENDANO QUIN
A/K/A JOSE QUIN,                                                            Appellant,

v.

THE STATE OF TEXAS,                                                        Appellee.

On appeal from the 93rd District Court
of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Chief Justice Contreras**

Appellant Jose Manuel Avendano Quin a/k/a Jose Quin was convicted of six counts of aggravated sexual assault of a child and one count of continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. §§ 21.02, 22.021. Each count is a first-degree felony. *Id.* §§ 21.02(h), 22.021(e). Quin was sentenced to ten years' confinement as to

the six aggravated sexual assault counts and twenty-five years' confinement as to the continuous sexual abuse count, with the sentences running concurrently. By two issues, Quin argues: (1) the jury charge instructions contained fundamental error and violated his right to a fair and impartial trial, and (2) the trial court abused its discretion in admitting the sexual assault nurse examiner (SANE) report. We affirm.

## I. BACKGROUND

Sam,[1] the minor child in this case, was eight years old at the time of the alleged abuse. Sam and her four siblings went to stay with Quin and his family on August 7, 2020, after Sam's mother was detained and jailed at a Hidalgo border crossing station. Quin's then-wife, Sara Gutierrez, was friends with Sam's mother and picked up the children from their home. Quin typically watched the children during the day because he worked in the morning and his wife worked in the evening. Gutierrez testified that she worked at a bakery, and she would "rest" for two days and work the other days of the week.

Sam and her two youngest siblings stayed with Quin, Gutierrez, and their three children until about October 1, 2020. Sam's two eldest siblings moved in with their father, Luis Fernando Moreno, a couple weeks after their mother's arrest. Sam and the two youngest siblings had a different father, and they went to live with their maternal aunt, Felicia Segura, around October 1. About a month after living with Segura, Sam moved in with her two older siblings at Moreno's, and her two youngest siblings went to live with Segura's sister. Sam and her siblings were reunited with their mother in December 2020.[2]

---

[1] To protect the identity of the minor child, we refer to her by the pseudonym given to her in the indictment. *See* TEX. CONST. art. I, § 30(a)(1) (providing that a crime victim has "the right to be treated . . . with respect for the victim's dignity and privacy throughout the criminal justice process").

[2] Sam's mother testified at trial that she was arrested due to a domestic violence allegation made by Sam's father.

2

Segura was the outcry witness. She testified that after the children moved out of her home, she often called the children to check on them. On November 18, 2020, she went to Moreno's home to take the children some school supplies. Sam and her eldest sister ran out of the house in tears when she arrived. Segura consoled them and asked them what was going on, but Sam was quiet and would not respond to Segura. Sam eventually told Segura that Quin had touched her while she lived at his house. When asked where she was touched, Sam pointed to her breast and vagina. Segura asked her if he touched her "in the private part" to which Sam responded that he put his private part in her and "it hurt." Sam told her it happened "a lot of times" and he would take her clothes off and put her on the bed in his bedroom. Segura then took Sam to the local police station and met with Officer Luis Carlos Martinez. Officer Martinez interviewed Segura and gathered information about Quin and where the alleged abuse took place. He also contacted the Texas Department of Family and Protective Services (CPS) and recommended that Sam obtain a sexual assault examination at a local hospital. Segura took Sam to the hospital the next day, and then a few days later, she took Sam to the Children's Advocacy Center (CAC) to be interviewed and examined by a forensic nurse.

Cynthia Gomez, a SANE or forensic nurse with the CAC, examined Sam. The State offered Gomez's SANE report into evidence. Quin's trial counsel objected to the written portion of her report documenting what Sam told her about the abuse, arguing that it was inadmissible hearsay. The trial court overruled the objection and admitted the report. The statement in the SANE report read in pertinent part:

> I asked her, "Can you tell me why you're here today?" . . . . "Patient responds: ["]Because a man 'me toco,' well, he was—he touch[ed] me, and he started to kiss me in my private parts with his tongue [going] inside here (point[s] to female sexual organ) and his finger, too, (point[s] to female

3

sexual organ[])[.] His name was José. He is the husband of my mom's friend. He put his part, the part that men pee from inside of mine (points to female sexual organ).

He did that, and that's it. He would take off my clothes, my shirt and my shorts and my underwear, too. He would start to put his part inside mine, and he would do it almost every day when his wife was working. He would put his part that he pees from inside of mine (points to female sexual organ). This was when my mom went to jail, and my older brothers went to live with [their] dad. I stayed with my younger siblings, him and his wife and his wife's daughters. . . . He would kiss me, and he would put his tongue inside my mouth. He told me to touch his part where he pees with my hand."

After Sam's mother was released from jail, she enrolled Sam in weekly therapy sessions at the CAC. Sam's counselor, Daniella Barrios, testified at trial. Barrios diagnosed Sam "with adjustment disorder with mixed disturbance of emotions and conduct." Barrios worked with Sam over the course of the appointments to create a "trauma narrative" to help process the alleged abuse. Barrio read Sam's "trauma narrative" into evidence without objection, including, in relevant part:

The lady that was her friend, my mom's friend, and her husband, they went to pick us up at our home and they took us to their apartment. I was very nervous because I didn't know them. It was nighttime. And we were sleeping on the mattress. Several days went by, and the abuse started.

First, he started touching me on my private parts. I was very scared, and I didn't know why he was doing that. After that day, the abuse continued.

Chapter 4: Enclosed abuse. I was playing as teachers and students with [two of Sam's siblings] and the three—and his three children and the lady. He called me, and he took me to his room when the lady was working. He started to put his private parts on mine. My body was telling me that I had to do something, but I was afraid. I was afraid for him to do something.

I was feeling physical pain on my lower part. Then he stopped doing it, and he let me go out there and play. And he called [one of my sisters] to the room, and he closed the door. I believe they were just talking because they were there just for a minute. When my sister got out of the room, I asked him what happened, what did he tell her. She said nothing, that he just talked to her and that he told her something. I asked her for security.

The jury heard the testimony of Sam, who was nine years old at the time of trial. When asked why she was there, she answered, "Because of the thing that happened." Sam was largely nonresponsive or would answer "I don't know" or "I don't remember" to the State's questions about the abuse. For example, the State asked Sam what happened to her, and Sam did not respond. When the State asked her why she was not able to answer, she responded "I think because I don't remember." Sam could also not testify to how often the abuse occurred:

[State]: Do you know how many times something like this happened? [Referring to the sexual abuse]

[Sam]: No.

[State]: Was it more than one time?

[Sam]: Yes.

[State]: Did it happen all on one day or did it happen on different days?

[Defense objects and objection is overruled]

[Sam]: I don't remember.

Sam testified that "the thing that happened," referring to the abuse, took place at Gutierrez's house and Gutierrez's room. When asked who was in the room when "that thing happened," she said she did not remember. The State introduced diagrams of a boy and girl to assist Sam with her testimony. After circling the genitals in both diagrams, she testified that the part she uses to "pee", her "bottom" area, and her "chee chee" or breasts, had been touched by "[t]he man" and she clarified that the man was Gutierrez's husband.

The jury convicted Quin on all counts, and the trial court sentenced him to twenty-five years' imprisonment. *See* TEX. PENAL CODE ANN. §§ 21.02, 22.021. This appeal followed.

## II.    CHARGE ERROR

By his first issue, Quin contends the court's charge to the jury contained error as to count seven, continuous sexual abuse of a child.

### A.    Standard of Review & Applicable Law

We review an alleged jury charge error for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). If we find error, we then analyze that error for harm. *Id.* The degree of harm necessary for reversal depends on whether the error was preserved. *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)); *Hernandez v. State*, 533 S.W.3d 472, 481 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). If the defendant preserved the alleged error, then we must reverse if we find "some harm." *Jordan*, 593 S.W.3d at 346 (citing *Almanza*, 686 S.W.2d at 171).

Quin's trial counsel did not object to any portion of the indictment and did not object to the jury charge instructions during the jury charge conference. Therefore, Quin did not preserve error. *Id.*; TEX. R. APP. P. 33.1. Where, as here, error was not preserved, we reverse only if that "error is fundamental—that is, the error creates egregious harm." *Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Almanza*, 686 S.W.2d at 171). Egregious harm "occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019). When considering whether a defendant

6

suffered egregious harm, we consider: (1) the entire jury charge; (2) the state of the evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the trial record. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020).[3]

Following the presentation of evidence in a felony case, the court must provide a written charge to the jury "distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. Quin challenges the jury charge instructions for continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02. A person over the age of seventeen commits the offense of continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than fourteen years of age. *Id.* Courts have interpreted this language to mean that there must be at least thirty days in between the first and last act of sexual abuse. *See, e.g.*, *Smith v. State*, 340 S.W.3d 41, 50–51 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

**B.    Analysis**

Quin argues that the application paragraph for count seven erroneously allowed the jury to convict him regardless of whether the predicate acts occurred at least thirty days apart. The instructions stated in pertinent part:

> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, JOSE MANUEL AVENDANO QUIN, did then and there, in

---

[3] Quin's brief argues that the jury charge contained "fundamental error" because the error denied him "the fair and impartial trial to which defendants are entitled" under the Texas and United States Constitutions. He implies that, if there is fundamental error, he is entitled to a new trial regardless of whether the issue was preserved because his constitutional rights have been infringed. He argues in the alternative that the charge contained "egregious error," and we should analyze the error for harm. However, the proper standard of review is to determine whether the alleged error was preserved and then apply the requisite harm analysis. *See Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020); *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). "[W]e will not reverse for unpreserved error unless the defendant shows that the error was 'fundamental' and that he suffered 'egregious harm.'" *Martinez v. State*, 662 S.W.3d 496, 500 (Tex. App.—San Antonio 2018, pet. ref'd) (citing *Reeves*, 420 S.W.3d at 816).

7

> Hidalgo County, Texas, *during a period that was 30 or more days in duration, to-wit: from on or about AUGUST 8, 2020, through on or about OCTOBER 1, 2020*, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against SAM, a pseudonym, a child younger than 14 years of age, namely, indecency with a child by contact and aggravated sexual assault of a child, then you will find the Defendant guilty of the offense of Continuous Sexual Abuse of a Child as charged in this indictment.

(Emphasis added). Quin contends that the emphasized language is erroneous because the use of "to-wit" merely emphasized that "August 8, 2020, through on or about October 1, 2020" is a time period that is thirty or more days in duration.

Quin relies on *Smith v. State* to argue that the jury instructions are erroneous. 340 S.W.3d 41. In *Smith*, the application paragraph instructed the jury to find appellant guilty of continuous sexual abuse of a child "if two or more acts of sexual abuse occurred on or about the 1st day of December, 2007, through the 1st day of September, 2008, which said time period being a period that was 30 days or more in duration." *Smith*, 340 S.W.3d at 50 (internal quotation marks omitted). The court in *Smith* concluded this instruction was erroneous because it did not clearly specify that the jury had to find that the last act of sexual abuse occurred at least thirty days after the first act. *Id.* at 50–51. The court subsequently held that the jury instruction did not egregiously harm the appellant. *Id.* at 53. Quin argues the jury charge instructions in this case contain error because, like in *Smith*, the jury was able to sentence him without finding that the predicate acts occurred at least thirty days apart.[4]

We assume, without deciding, that the jury charge instructions were erroneous. *See id.* at 50–51; *see also Pelcastre v. State*, 654 S.W.3d 579, 587–88 (Tex. App.—

---

[4] We note that Quin does not argue how the jury charge should have been written.

8

Houston [14th Dist.] 2022, pet. ref'd) (holding similar instructions describing the durational element for continuous child sexual abuse erroneous); *Lewis v. State*, No. 06-21-00021-CR, 2022 WL 630288, at *6 (Tex. App.—Texarkana Mar. 4, 2022) (mem. op., not designated for publication) (same); *Turner v. State*, 573 S.W.3d 455, 462 (Tex. App.—Amarillo 2019, no pet.) (same); *Jimenez v. State*, No. 07-13-00303-CR, 2015 WL 6522867, at *5–6 (Tex. App.—Amarillo Oct. 26, 2015, pet. ref'd) (mem. op., not designated for publication) (same).

In turning to the harm analysis, we consider whether the error in the jury charge instructions, if any, caused egregious harm. *See Pelcastre*, 654 S.W.3d at 588–90; *see also Lewis*, 2022 WL 630288, at *7; *Turner*, 573 S.W.3d at 463–64; *Jimenez*, 2015 WL 6522867, at *6–7. First, the State mitigated any confusion of the durational element during voir dire and its closing argument. When explaining the offense of continuous sexual abuse of a child on voir dire, the State's trial counsel stated that, "The bottom line is that the crime has been going [on] during a period of 30 or more days." When explaining the durational element again in closing argument, the State's counsel explained that they "just [had] to prove that [the sexual abuse] happened for more than 30 days."

Second, though Sam could not testify to how long or how often the abuse had occurred, the jury could infer from the evidence presented at trial that the abuse occurred throughout the time she stayed at Quin's home from August to October 2020. The jury heard evidence that Quin was often alone with the children because Gutierrez worked from about 2:00 p.m. to 9:00 p.m., and Gutierrez worked about five days a week. The SANE report indicated that Sam said the abuse occurred "almost every day when [Gutierrez] was working." The jury also heard from Segura, who testified that Sam said

9

the abuse happened "a lot of times" when she was living at Quin's house. Furthermore, the jury heard from Barrios, who read Sam's "trauma narrative" into evidence. It stated that the abuse started several days after arriving at Quin's home and "the abuse continued." The jury could infer from the evidence presented at trial that thirty or more days elapsed between the first and last acts of abuse.

Lastly, Quin's defensive theory at trial was that he did not abuse Sam and she was lying about the abuse. Quin did not testify and did not call any witnesses at trial. By rendering guilty verdicts, the jury obviously rejected this theory. It is therefore highly unlikely that a more specific instruction regarding the durational element of continuous sexual abuse would have changed the result. *See Braughton v. State*, 569 S.W.3d 592, 611 (Tex. Crim. App. 2018) ("[B]y its implicit rejection of appellant's defenses in finding him guilty, the jury necessarily signaled its disbelief in this testimony as lacking in credibility. . . ."); *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991) (noting the assessment of credibility of defensive evidence is "solely within the jury's province and the jury is free to accept or reject the defensive evidence"; "[a] jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory").

Accordingly, we conclude that any error in the jury charge instructions did not cause egregious harm. The record indicates that any confusion from the application paragraph of the jury charge instructions was mitigated by the State's explanation of the charge to the jury and was rendered harmless by the evidence introduced at trial. Quin's first issue is overruled.

10

## III. SANE REPORT

By his last issue, Quin argues the trial court abused its discretion in admitting the SANE report over his trial counsel's hearsay objection.

## A. Standard of Review & Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). Under this standard, we may not reverse the trial court's judgment unless it "falls outside the zone of reasonable disagreement." *Id.* at 83 (citations omitted).

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible, but Texas Rule of Evidence 803(4) provides that statements made for, and that are reasonably pertinent to, medical diagnosis or treatment are not excluded by the rule against hearsay. *Id.* 802, 803(4). "This [hearsay] exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment." *Franklin v. State*, 459 S.W.3d 670, 676 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Bautista v. State*, 189 S.W.3d 365 (Tex. App.—Fort Worth 2006, pet. ref'd)).

"Texas courts have held that statements by a suspected victim of child abuse as to the causation and source of the child's injuries are admissible under rule 803(4)." *Horner v. State*, 129 S.W.3d 210, 220 (Tex. App.—Corpus Christi–Edinburg 2004, pet. ref'd) (quoting *Gregory v. State*, 56 S.W.3d 164, 183 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd)). "[U]nlike ordinary medical problems, the treatment of child abuse includes removing the child from the abusive setting. Thus, the identity of the abuser is

pertinent to the medical treatment of the child." *Id.* (quoting *Fleming v. State*, 819 S.W.2d 237, 247 (Tex. App.—Austin 1991, pet. ref'd)).

The Texas Court of Criminal Appeals has observed that "it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Taylor v. State*, 268 S.W.3d 571, 589 (Tex. Crim. App. 2008). Thus, we may infer from the record that a victim knew it was important to tell a SANE the truth in order to obtain medical treatment or diagnosis, and we examine the record only for evidence that would negate such an awareness. *See id.*; *Franklin*, 459 S.W.3d at 677.

## B.     Analysis

Quin argues the trial court abused its discretion when it admitted the report from Gomez because the report included inadmissible hearsay from Sam. Quin contends the hearsay was not admissible under Rule 803(4) because "there was no showing that the declarant/complainant was aware that the statements were made for the purpose of medical diagnosis or treatment and that proper diagnosis or treatment depend[ed] upon the veracity of such statements." *See* TEX. R. EVID. 803(4). The hearsay at issue was a statement made by a victim to a forensic nurse during a sexual assault examination. We therefore presume that Sam understood that veracity served her best interest in answering Gomez's questions during her exam, and we look to evidence in the record that would negate that awareness. *See Taylor*, 268 S.W.3d at 589.

When asked about her appointment with Gomez and if she told Gomez "the truth about what happened," Sam testified that she could not remember. However, she also

12

testified that she told her oldest sister, Segura, and Barrios the truth about the abuse. Furthermore, evidence showed that Segura took Sam to the CAC a few days after her outcry. Gomez testified that she was the SANE or forensic nurse who examined Sam for signs of abuse. She told the jury that she described the medical exam procedure to Sam and Segura. Gomez also detailed the way she obtains consent from the patient to proceed with the exam. She asked Sam why she was there that day, and Sam told her it was because a man had touched her. The SANE report indicated that Sam "appear[ed] alert and oriented to time, person, place, and situation" during the exam.

We find the court could have reasonably concluded from Gomez's testimony that Sam made the statements to Gomez for the purpose of receiving medical treatment for sexual abuse and appreciated that the effectiveness of the treatment depended on the accuracy of the information she provided. *See Lumsden v. State*, 564 S.W.3d 858, 886 (Tex. App.—Fort Worth 2018, pet. ref'd) (concluding that the court did not abuse its discretion in admitting the SANE report because the nurse testified that the complainant's statements "enabled her to know where to look on [the complainant's] body for injuries and to help diagnose any medical condition"); *Franklin*, 459 S.W.3d at 677–78 (concluding that there was sufficient evidence that the complainants understood the need to be truthful for the medical examination because the nurse identified herself to them, explained why she was meeting with them, and detailed the procedures of the examination to them); *Horner*, 129 S.W.3d at 220 (concluding that the nurse's testimony that she believed complainant understood the purpose in talking with her about the abuse was sufficient to indicate that the complainant made truthful statements for the purpose of receiving treatment).

We conclude the admission of the complained-of testimony was not error because it was admissible under the medical-diagnosis-or-treatment exception to the hearsay rule. *See* TEX. R. EVID. 803(4). Quin's second issue is overruled.

### IV. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS<br>
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
7th day of December, 2023.