

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-14-00513-CR

Marcos **MELENDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2013CR7816
Honorable Maria Teresa Herr, Judge Presiding

Opinion by:  Sandee Bryan Marion, Chief Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 6, 2015

AFFIRMED

Marcos Melendez pled guilty to possession of a controlled substance after the trial court

denied his motion to suppress.  On appeal, Melendez contends the trial court erred in: (1) failing

to enter findings of fact and conclusions of law; and (2) denying his motion to suppress.  We affirm

the trial court's judgment.

### BACKGROUND

The only witness to testify at the hearing on Melendez's motion to suppress was Officer

Mark Ortega.  Officer Ortega testified that he was dispatched to a nightclub at 1:55 a.m. in response

to a call that an individual was trying to sell cocaine to an unknown female at the location. Officer Ortega testified that the nightclub was a problem area with fights every Friday and Saturday night, recent shootings, and "there's a lot of narcotics that come out of there." Officer Ortega arrived at the nightclub at 2:01 a.m. and went to speak to the manager who advised him that security officers had detained the male who was trying to sell narcotics to a female in the nightclub. Officer Ortega did not know who the female was.

Officer Ortega approached the individual, later identified as Melendez, who was being detained by security officers outside the entrance of the nightclub. The security officers had not searched Melendez, but had placed him in handcuffs. Officer Ortega led Melendez to his patrol car for safety reasons since the nightclub was preparing to close, and replaced the security officer's handcuffs with his own.

Because Melendez spoke Spanish, another officer assisted Officer Ortega in questioning Melendez. Officer Ortega testified that Melendez appeared to be intoxicated because he could smell a strong scent of intoxicants on his breath. Melendez was first asked if he had any drugs or weapons on him, and he responded that he did not. Officer Ortega next asked if Melendez would consent to a search, and he said yes. During the search, Officer Ortega found a controlled substance in Melendez's pocket and placed Melendez under arrest.

After hearing Officer Ortega's testimony, the trial court denied Melendez's motion to suppress. Melendez pled guilty to the offense of possession of a controlled substance and was placed on deferred adjudication community supervision. On appeal, Melendez challenges the trial court's denial of his motion to suppress.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

In his first issue, Melendez contends that the trial court erred in failing to enter findings of fact and conclusions of law. The State responds that Melendez did not file a timely request for

findings of fact and conclusions of law because the request was not filed until nearly six weeks after the trial court's ruling on the motion. The State also contends that because the request was filed by Melendez *pro se* when he was represented by appointed counsel, the trial court was not required to enter findings of fact and conclusions of law in response to the *pro se* request.

A.      Timeliness

In *State v. Cullen*, the Texas Court of Criminal Appeals held "upon the request of the losing party on a motion to suppress evidence, the trial court shall state its essential findings." 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). The court then looked to Rule 297 of the Texas Rules of Civil Procedure to provide guidance regarding timing. *Id*. The court noted, "The rule states that 'The court shall file its findings of fact and conclusions of law within twenty days after a ***timely*** request is filed.'" *Id*. (quoting TEX. R. CIV. P. 297) (emphasis added).

Citing *Cullen*, the State contends the trial court was not required to enter findings of fact and conclusions of law unless a "timely" request was filed. We agree. *See Jackson v. State*, Nos. 13-11-031-CR, 13-11-032-CR, 13-11-033-CR, 13-11-0034-CR & 13-11-035-CR, 2011 WL 2651793, at *1 n.3 (Tex. App.—Corpus Christi July 7, 2011, no pet.) (holding trial court did not err in denying an untimely request for findings of fact and conclusions of law after denying a motion to suppress) (not designated for publication).

The State also, however, contends Melendez's request was not timely filed because it was filed "nearly six weeks after the trial court made the ruling on the motion to suppress." We disagree.

As previously noted, in *Cullen*, the Texas Court of Criminal Appeals looked to the Texas Rules of Civil Procedure to provide guidance on the entry of findings of fact and conclusions of law relating to a trial court's ruling on a motion to suppress. 195 S.W.3d at 699. Rule 296 requires a request for findings of fact and conclusions of law to be filed "within twenty days after ***judgment***

is signed." TEX. R. CIV. P. 296 (emphasis added). In this case, the trial court signed the terms and conditions placing Melendez on deferred adjudication community supervision on July 14, 2014, and signed the order of deferred adjudication on July 17, 2014. Melendez filed a *pro se* request for findings of fact and conclusions of law on July 16, 2014. Thus, Melendez's request was filed less than twenty days after the trial court's "judgment" was signed. Accordingly, Melendez's request was timely filed. *See* TEX. R. CIV. P. 296.

      B.     Hybrid Representation[1]

The State also contends the trial court was not required to enter findings of fact and conclusions of law in response to Melendez's *pro se* request because Melendez was represented by counsel when the request was filed. We agree.

In *Robinson v. State*, the Texas Court of Criminal Appeals held because a defendant has no right to hybrid representation, a trial court is free to disregard any *pro se* motions presented by a defendant who is represented by counsel. 240 S.W.3d 919, 922 (Tex. Crim. App. 2007). Although the document in this case is a request and not a motion, this factual distinction does not affect the applicability of the legal principle which does not require a trial court to take any action with regard to a *pro se* defendant's filing when the *pro se* defendant is represented by counsel. *See id*. Because the record in this case reflects that Melendez was represented by counsel when he filed his *pro se* request, the trial court was free to disregard it. *See id*. Accordingly, Melendez's first issue is overruled.

**MOTION TO SUPPRESS**

In his second issue, Melendez contends the trial court erred in denying his motion to suppress because the security guards made an illegal citizen's arrest in the absence of a breach of

---

[1] "Hybrid" representation "is defined as representation partly by counsel and partly by self." *Robinson v. State*, 270 S.W.3d 919, 921 (Tex. Crim. App. 2007).

the peace by Melendez. In his third issue, Melendez contends the trial court erred in denying his motion to suppress because the citizen's arrest was illegal, and Officer Ortega did not develop probable cause to maintain custody over Melendez upon Officer Ortega's arrival at the scene. In his fourth issue, Melendez contends his consent to Officer Ortega's search was involuntary because it also was tainted by the illegal citizen's arrest.

The State responds that the security guards had reasonable suspicion to detain Melendez, and the same information supporting their initial detention supported Melendez's continued detention by Officer Ortega upon his arrival. Because Melendez was lawfully detained, the State asserts his consent to Officer Ortega's search was voluntary.

A. Standard of Review

In reviewing a trial court's ruling on a motion to suppress, we view the evidence in the light most favorable to the trial court's ruling. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). Because the trial court did not make explicit findings of fact, we infer "the necessary factual findings that support the trial court's ruling if the record evidence (viewed in the light most favorable to the ruling) supports these implied factual findings." *Id*.

B. Evaluation of Actions by the Security Officers

The parties agree that the record contains no evidence that the security officers were certified peace officers or off-duty policemen. Therefore, the actions of the security officers are evaluated under the same law applicable to ordinary citizens.

The Texas exclusionary rule provides "No evidence obtained by an officer ***or other person*** in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005) (emphasis added). The Texas exclusionary rule is broader than the federal exclusionary rule that

applies only to governmental actors, not private individuals. *Miles v. State*, 241 S.W.3d 28, 34 (Tex. Crim. App. 2007). Thus, the Texas exclusionary rule applies to illegal searches or seizures conducted by "'other persons,' even when those other persons are not acting in conjunction with, or at the request of, government officials." *Id.* at 36. In applying the rule, the Texas Court of Criminal Appeals has explained, "a private person can do what a police officer standing in his shoes can legitimately do, but cannot do what a police officer cannot do." *Id.* at 39.

C.      Detention or Arrest

"There are three distinct types of police-citizen interactions: (1) consensual encounters that do not implicate the Fourth Amendment; (2) investigative detentions that are Fourth Amendment seizures of limited scope and duration that must be supported by a reasonable suspicion of criminal activity; and (3) arrests, the most intrusive of Fourth Amendment seizures, that are reasonable only if supported by probable cause." *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013). Which type of encounter exists under a given set of historical facts is a question of law that is reviewed de novo. *State v. Garcia-Cantu*, 253 S.W.3d 296, 241 (Tex. Crim. App. 2008).

Both an arrest and a detention are restraints on a person's freedom; however, an arrest involves a greater degree of restraint. *State v. Sheppard*, 271 S.W.3d 281, 290 (Tex. Crim. App. 2008); *State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.). "We evaluate whether a person has been detained to the degree associated with arrest on an *ad hoc*, or case-by-case, basis." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). "In making the custody determination, the primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to a formal arrest, given all the objective circumstances." *Id.* (internal citations omitted). The following factors may be considered when determining whether a seizure was a detention or an arrest: (1) the amount of force displayed; (2) the duration of a detention; (3) the efficiency of the investigative process and

whether it is conducted at the original location or the person is transported to another location; (4) the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation; and (5) any other relevant factors. *Sheppard*, 271 S.W.3d at 291; *Whittington*, 401 S.W.3d at 272. "Additional factors Texas courts have found relevant when determining the reasonableness of a detention include the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the number of suspects present, the reaction of each suspect, and whether the officer actually conducts an investigation." *Whittington*, 401 S.W.3d at 272.

"During an investigatory detention, officers are permitted to use reasonably necessary force to maintain the status quo, effectuate an investigation, or protect the safety of individuals at the scene." *Whittington*, 401 S.W.3d at 272. "For example, it is sometimes reasonable for officers to handcuff suspects during an investigatory detention in order to maintain the status quo or to ensure officer safety." *Whittington*, 401 S.W.3d at 272; *see also Sheppard*, 271 S.W.3d at 289 (stating the use of handcuffs does not automatically convert a detention into an arrest).

In this case, the only force shown to have been displayed was the use of handcuffs. The evidence, however, established that the nightclub was known for having problems, and the trial court could infer from the evidence that Melendez approached the female around the time the nightclub was closing at 2:00 a.m. Although Melendez argues the record does not establish the duration of the detention because no evidence establishes when the security officers initially detained him, we defer to the trial court's evaluation of the historical facts, and the trial court could reasonably have inferred that Officer Ortega received the dispatch shortly after the security guards restrained Melendez. The evidence establishes that Officer Ortega arrived only six minutes after receiving the dispatch, and the investigative process was conducted at the original location. Finally, the evidence establishes Melendez was initially placed in the handcuffs by the security

officers while awaiting the arrival of law enforcement. After reviewing the totality of the circumstances, we conclude that Melendez was detained by the security officers.[2] Because Officer Ortega asked Melendez only two questions shortly after arriving, we further conclude that Melendez was not arrested until after Officer Ortega conducted the search and found the controlled substance in his pocket.

### D. Reasonable Suspicion

As previously noted, a detention of a person is only required to be supported by reasonable suspicion. *Wade*, 422 S.W.3d at 667. "Reasonable suspicion to detain a person exists if an officer has specific, articulable facts that, combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activities." *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). "These facts must show unusual activity, some evidence that connects the detainee to the unusual activity, and some indication that the unusual activity is related to crime." *Id.* "The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention." *Id.* at 274. In determining whether reasonable suspicion exists, the totality of the circumstances are considered. *Id.*

Melendez contends that the security officers did not have reasonable suspicion to detain him because the information that he was attempting to sell cocaine was provided to the nightclub manager by an unidentified club patron. A citizen's tip may provide reasonable suspicion to support a detention if the tip contains sufficient indicia of reliability. *Nacu v. State*, 373 S.W.3d

---

[2] Because we conclude the security officers did not arrest Melendez, but only detained him, no "citizen's arrest" occurred that would require further analysis under article 14.01(a) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 14.01(a) (West 2005) (providing "other person" may arrest an offender without a warrant for an offense "classed as a felony or as an offense against the public peace" when the offense is committed in his presence or within his view).

691, 694 (Tex. App.—San Antonio 2012, no pet.). Because the record does not establish that the female club patron was identified by name, we treat her as an anonymous citizen informant. *Id*. "We evaluate four factors in determining the reliability of an anonymous citizen's information: (1) whether the informant provided a detailed description of the wrongdoing; (2) whether the informant observed the wrongdoing firsthand; (3) whether the informant is somehow connected with the police (e.g., a paid informant); and (4) whether the informant placed himself in a position to be held accountable for the report." *Id*. (internal citations omitted). Where unsolicited information is provided in a face-to-face encounter, as opposed to an anonymous call, the information is considered inherently more reliable because the face-to-face informant "places himself or herself in a position to be held responsible" for the information provided. *Id*. Applying these factors, the female club patron provided a sufficiently detailed description of the wrongdoing by reporting that Melendez was trying to sell her cocaine on the nightclub's premises. In addition, she observed the wrongdoing firsthand and was not connected with the police. Finally, she provided the information in a face-to-face encounter, making the information she provided inherently more reliable.

After applying the factors, we conclude the information provided by the female club patron was reliable. Furthermore, the security officers' ability to locate Melendez on the premises of the nightclub based on the information provided by the female club patron sufficiently corroborated her information, and thereby established reasonable suspicion to justify Melendez's detention. *Id*. at 695. Finally, Officer Ortega was entitled to rely on this same information in briefly continuing Melendez's detention after his arrival. *See Arizpe v. State*, 308 S.W.3d 89, 91-92 (Tex. App.—San Antonio 2010, no pet.) (noting facts to support reasonable suspicion "need not be based upon an officer's personal observations").

E.       Conclusion

After reviewing the totality of the circumstances, we conclude Melendez was not arrested by the security officers, but only detained.  Because the security officers had reasonable suspicion that Melendez was or had been attempting to sell narcotics to a female club patron, they were authorized to detain him, and Officer Ortega was authorized to further detain Melendez pending his investigation based on this same information.  Accordingly, Melendez's second and third issues are overruled.  In his fourth issue, Melendez contends his consent to Officer Ortega's search was involuntary because he was illegally arrested.  Having overruled Melendez's contention that he was illegally arrested in his second and third issues, Melendez's fourth issue is also overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Sandee Bryan Marion, Chief Justice

PUBLISH