

# NUMBER 13-16-00645-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOSE MARIO SALAZAR,                                                          Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the County Court at Law No. 2
## of Hidalgo County, Texas.

## MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Longoria
Memorandum Opinion by Justice Rodriguez**

By seven issues, appellant Jose Mario Salazar appeals his conviction for driving while intoxicated (DWI). *See* TEX. PENAL CODE ANN. § 49.04(a)–(b) (West, Westlaw through 2017 1st C.S.). We affirm.

## I.  SPEEDY TRIAL

By his first issue, Salazar contends that the trial court erred in denying his motion to dismiss on the basis that the State infringed upon his Sixth Amendment right to a speedy trial.  Salazar asserts he was subjected to an unreasonable delay of eighteen months between his arrest and his trial, and that in the interim, he was subjected to many needless continuances due to the State's neglectful prosecution of his case.

### A.  Background

Salazar was arrested on December 10, 2014 and released on bond the same night.  The Hidalgo County District Attorney filed charges for misdemeanor DWI on March 13, 2015, and in April, Salazar received and waived notice of arraignment.  On June 2, 2015, Salazar filed a motion to suppress, and he appeared ready to proceed on the motion on August 4, 2015.  The State moved for continuance on the ground that it had been unable to "track down the victim who actually witnessed" the collision, Eduardo Fayett Jr.  The trial court granted continuance.

On September 17, 2015, the suppression hearing was held.  The trial court denied suppression and set the case for trial.

On November 17, 2015, Salazar appeared and announced ready for trial.  The State announced that it was not ready because an officer was out of town.  The court reset the trial and indicated that if the officers did not appear, the case would be dismissed.

On December 8, 2015, Salazar appeared and announced ready.  The State requested a one-day continuance to secure Fayett's attendance.  According to the State,

2

Fayett had been subpoenaed multiple times but had not appeared. The State indicated that it would "be dismissing this case if we can't contact the essential witness."

On December 9, 2015, the State conceded that up until the previous day, it had not made contact with "anybody from the establishment" where the collision occurred, but the State had now contacted the owners of the bar and was "gathering information." The State also asserted that it had just discovered Salazar's prior conviction for felony intoxication manslaughter, and the State requested time to do "due diligence." No such conviction appears in the record, and the alleged conviction was not subsequently mentioned in the record. Salazar requested a setting for the next week, but the trial court instead reset the case for January 5, 2016, indicating that there would be "no further continuances on behalf of the State."

The case was called on January 19, 2016.[1] Salazar appeared and announced ready, but the State again requested a continuance. According to the State, it had recently learned that there were two security officers at the bar who may have witnessed the collision and stopped Salazar from leaving: Jose Gonzalez and Juan Rios, who were subpoenaed but did not appear. No mention was made of Fayett. The State further explained that Detective J.D. Martinez, who conducted Salazar's breath test, was unavailable due to a health emergency involving his daughter. The trial was reset.

On February 5, 2016, Salazar filed a motion to dismiss based on the State's violation of his right to a speedy trial.

---

[1] No explanation appears in the record for the apparent discrepancy between setting the case for January 5, 2016 and calling the case on January 19, 2016.

On February 9, 2016, Salazar appeared and announced ready for trial. The State requested a continuance. According to the State, Detective Martinez had back surgery on February 2, 2016 and would be unable to testify for two to three months.[2] The trial court denied Salazar's speedy-trial motion and granted continuance.

At a status hearing on February 23, 2016, Salazar reurged his speedy-trial argument and requested a trial setting. A second status hearing was held March 2, 2016, at which Salazar appeared and again requested a trial setting. The State requested and received a setting for the latter half of April.

On April 19, 2016, Salazar appeared and announced ready. The State requested a continuance, explaining that Detective Martinez was still recovering from his surgery. Salazar reurged his speedy-trial argument, and the trial court granted "one last reset," stating that the case would be dismissed if the officer did not appear.

On May 27, 2016, Salazar filed a second motion to dismiss for violation of his right to a speedy trial.

On May 31, 2016, trial commenced. Fayett was not called to testify.

B.     **Applicable Law and Discussion**

The Sixth Amendment guarantees a defendant in a criminal prosecution the right to a speedy trial. *Hopper v. State*, 520 S.W.3d 915, 923 (Tex. Crim. App. 2017). To establish a violation, the defendant must first make a threshold showing that the interval between accusation and trial is "*prima facie* unreasonable under the circumstances." *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003). Once the defendant has

---

[2] The trial court requested documentation of the surgery by the following week. No documentation appears in the record, and Salazar asserts that no documentation was ever produced.

4

satisfied his threshold burden, the court must then conduct a *Barker* balancing test, in which the conduct of both the prosecution and the defendant are weighed. *Vermont v. Brillon*, 556 U.S. 81, 90 (2009).

In *Barker*, the Supreme Court listed four factors that a court should weigh: (1) the length of delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay. *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972); *Balderas v. State*, 517 S.W.3d 756, 767 (Tex. Crim. App. 2016), *cert. denied*, 137 S.Ct. 1207 (2017). No one factor is either a necessary or sufficient condition within this balancing test. *Cantu v. State*, 253 S.W.3d 273, 281 (Tex. Crim. App. 2008). While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. *Id.* at 280. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay. *Id.* "[T]he greater the State's bad faith or official negligence and the longer its actions delay a trial, the less a defendant must show actual prejudice or prove diligence in asserting his right to a speedy trial." *Id.* at 280–81.

Because the trial court denied Salazar's speedy-trial claim, we presume that the trial court resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports. *Id.* at 282. We review de novo whether there was sufficient presumptive prejudice to trigger a *Barker* analysis and the weighing of the *Barker* factors. *Gonzales v. State*, 435 S.W.3d 801, 809 (Tex. Crim. App. 2014).

### 1. Length of Delay

"The length of delay is a double inquiry:   A court must consider whether the delay is sufficiently long to even trigger a further analysis under the *Barker* factors, and if it is, then the court must consider to what extent it stretches beyond this triggering length." *Hopper*, 520 S.W.3d at 924.   The length of the delay is measured from the time the defendant is arrested or formally accused.   *Shaw*, 117 S.W.3d at 889.

"Depending on the nature of the charges," *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992), a delay approaching one year is generally sufficient to trigger a speedy-trial inquiry.   *Shaw*, 117 S.W.3d at 889.

Here, there was a delay of eighteen months between the initial arrest and Salazar's eventual trial.   This delay satisfies Salazar's threshold burden and requires us to perform a *Barker* balancing test.   *See id.*   However, we conclude that the delay did not greatly exceed the threshold for presumptive prejudice and does not weigh heavily against the State.   *See State v. Munoz*, 991 S.W.2d 818, 829 (Tex. Crim. App. 1999) (en banc) (describing delay of seventeen months as not "excessive"); *State v. McCoy*, 94 S.W.3d 296, 305 (Tex. App.—Corpus Christi 2002, no pet.) (same); *compare Cantu*, 253 S.W.3d at 279 (assuming that the first factor favored the defendant upon a seventeen-month delay in a DWI case, but reversing dismissal based on negligible showing regarding other factors) *with Zamorano v. State*, 84 S.W.3d 643, 649 & 651 n.42 (Tex. Crim. App. 2002) (en banc) (granting dismissal of DWI case, in part because the delay of four years in prosecuting the "simple DWI" case "weigh[ed] heavily against the State").

2.     **State's Reason for the Delay**

In assessing the reasons for delay, a court must ask "whether the government or the criminal defendant is more to blame for the delay." *Hopper*, 520 S.W.3d at 924. A finding of deliberate or bad-faith delay renders relief almost automatic, *Zamorano*, 84 S.W.3d at 649, whereas more neutral reasons such as negligence or overcrowded courts weigh against the government but less heavily. *Hopper*, 520 S.W.3d at 924.[3] A "valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531.

Although the early stages of the case proceeded normally, delays and continuances then began to accumulate. The State contends that many of the continuances were due to circumstances beyond its control. The record confirms that the State issued numerous subpoenas that went unheeded. The State further contends that Detective Martinez's family and medical needs account for four more months of delay. *See id.* These explanations satisfy a large part of the State's burden to justify the delay. *See Cantu*, 253 S.W.3d at 280.[4]

However, the State concedes that the three-month period of delay between November 17, 2015 and February 9, 2016 could potentially have been "minimized or

---

[3] Salazar contends that this argument is waived because the State failed to submit its explanation for the delay or any supporting evidence in a verified motion for continuance, citing article 29.03 of the code of criminal procedure. *See* TEX. CRIM. PROC. CODE ANN. art. 29.03 (West, Westlaw through 2017 1st C.S.). Salazar misconstrues our waiver rules. "[A]ppellate courts may *uphold* a trial court's ruling on any legal theory or basis applicable to the case, but usually may not *reverse* a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised." *Carroll v. State*, 101 S.W.3d 454, 459 n.34 (Tex. Crim. App. 2003) (emphasis in original).

[4] In their briefs, neither party mentions the State's previous assertion that Salazar had been convicted of intoxication manslaughter, the circumstances under which the State discovered this alleged fact nearly a year after Salazar's arrest, or whether this allegation affects the scales of the *Barker* balancing test.

eliminated upon dedication of further resources to secure" the witnesses' attendance. Dating back to the early stages of the case, the State acknowledged the importance of obtaining witnesses from the bar who saw the collision, but it was not until the middle of the second trial setting, a year after the collision, that the State contacted "anybody from the establishment" to investigate. In the interim, the State requested and received three continuances to secure testimony from Fayett, who was ultimately not called at trial. While the process of "collecting witnesses against the defendant" is generally among the valid reasons for delay, *Hopper v. State*, 495 S.W.3d 468, 474 (Tex. App.—Houston [14th Dist.] 2016), *aff'd*, 520 S.W.3d 915 (Tex. Crim. App. 2017), some neglect is apparent in that process in this case.

The State carried its burden to provide a reasonable explanation for a great majority of the delay. Nonetheless, three months of delay can be attributed to the State's slight carelessness in prosecuting a relatively straightforward offense.[5] This factor weighs slightly against the State.

### 3. Defendant's Assertion of Right

Whether and how a defendant asserts the right to a speedy trial is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.

---

[5] In the words of the court of criminal appeals, this "was not a complex case; it was a simple DWI . . . ." *See Zamorano v. State*, 84 S.W.3d 643, 650 (Tex. Crim. App. 2002) (en banc); *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App. 2014) ("A justifiable reason for delay in a complex white-collar case, for example, may not be a justifiable reason for delay in a simple assault case."). The State delayed 538 days in prosecuting Salazar for a single Class B misdemeanor which carried a maximum penalty of 180 days in county jail. *See* TEX. PENAL CODE ANN. §§ 12.22(2), 49.04 (West, Westlaw through 2017 1st C.S.). Only five witnesses ultimately testified at trial, even after the State obtained five resettings in order to secure the participation of witnesses, as well as a continuance of the suppression hearing on the same grounds. Relative to the scale of the undertaking, the prosecution's delay appears somewhat more unreasonable.

*Cantu*, 253 S.W.3d at 282–83. "The more serious the deprivation, the more likely a defendant is to complain." *Id.* at 283 (quoting *Barker*, 407 U.S. at 531). Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal. *Id.*

Throughout the process, Salazar asserted his right to a speedy trial: consistently requesting prompt settings and appearing at each setting ready to proceed; respectfully resisting further delays from the State; and after those efforts failed, filing two speedy-trial motions, putting on supporting proof, and orally renewing objection at each opportunity. *See Zamorano*, 84 S.W.3d at 651 (finding that this factor weighed in favor of an appellant who consistently announced "ready" at all trial dates and filed two speedy-trial motions). This factor weighs in favor of Salazar. *See Cantu*, 253 S.W.3d at 283.

### 4. Prejudice to Defendant

The prejudice factor should be assessed in light of the interests that the right to a speedy trial was designed to protect: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. *Hopper*, 520 S.W.3d at 924. Of these three types of prejudice, the last is the most serious because the inability of a defendant to adequately prepare his case skews the fairness of the entire system. *Cantu*, 253 S.W.3d at 285. As part of the second factor, courts have considered the strain on the defendant from "disruption of life" due to unresolved criminal charges, *Doggett*, 505 U.S. at 661, and

9

"disruption in employment or a draining of financial resources . . . ." *Cantu*, 253 S.W.3d at 286.

It is undisputed that Salazar suffered no pretrial incarceration, and there was no indication that his defense was impaired. *See Hopper*, 520 S.W.3d at 924. Moreover, there was no testimony that Salazar suffered anxiety or concern over the proceedings. *See id.*

Instead, Salazar's showing of prejudice rests entirely on disruption in employment or draining of financial resources. Salazar testified that he traveled often for work and that each trial setting either disrupted his business travel or forced him to travel from his home in Houston to Edinburg. Salazar testified that it was a "hassle" to be forced to miss work and go through the time and expense of preparing for trial, only to have the case continued multiple times.

The record confirms that Salazar was required to make some "fruitless and costly trips to court" over the course of five resettings. *See Cantu*, 253 S.W.3d at 286. However, that strain was far less extreme than in other cases which have found prejudice based on such hardship. *See, e.g.*, *Zamorano*, 84 S.W.3d at 653–54 (finding prejudice in a DWI case based on twenty-two resettings over four years and testimony concerning defendant's "desperation," with quantifiable evidence of expenses and lost wages); *State v. Burckhardt*, 952 S.W.2d 100, 104 (Tex. App.—San Antonio 1997, no pet.) (finding prejudice in a DWI case based on seven required trips from Las Vegas to San Antonio, with evidence that the defendant lost well over $125,000 in wages and was forced to rely on unemployment benefits, causing anxiety and concern).

10

Because Salazar made little if any showing of prejudice, this factor weighs against Salazar.

**C.    Conclusion**

The State largely carried its burden to justify the delay:   the delay did not greatly exceed the triggering period for a *Barker* analysis, the State offered valid explanations for a great majority of this delay, and only a three-month period was attributable to the State's neglect.   Salazar's burden thus "varie[d] inversely" and required a greater showing of assertion and prejudice.   *Id.* at 280.   We conclude that Salazar did not carry this burden. While Salazar consistently asserted his right, he made little if any showing of prejudice. *See State v. Williams*, 90 S.W.3d 913, 921 (Tex. App.—Corpus Christi 2002, no pet.) (finding no violation because seventeen-month delay was mostly justified and appellant's slight anxiety was "insufficient to cause the prejudice prong to weigh in his favor"); *Webb v. State*, 36 S.W.3d 164, 175–76 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (en banc) (finding no violation based on twenty-month delay; "[w]hile the presumption of an unreasonable delay and the assertion of a right to a speedy trial support the appellant's position, the State showed valid reasons for the delay, and the appellant suffered little or no prejudice"); *see also Ivy v. State*, No. 13-01-165-CR, 2002 WL 1265564, at *5 (Tex. App.—Corpus Christi June 6, 2002, no pet.) (not designated for publication) (finding no violation where appellant asserted his right to a speedy trial, but the seventeen-month delay was "not excessive," the State offered valid reasons, and appellant's only showing concerning prejudice was "anxiety," which was "not enough to cause the prejudice prong to weigh in appellant's favor").

11

Accordingly, we overrule Salazar's first issue.

## II. SUFFICIENCY OF THE EVIDENCE

By his second issue, Salazar contends that there is insufficient evidence to support the jury's verdict. Salazar argues there was no evidence to show that he actually drove the vehicle, or if he did drive the vehicle, that he was intoxicated while doing so.

## A. Background

Juan Rios was working as a security guard at a bar on the night of the arrest. He testified that he saw Salazar enter the driver's side of his vehicle and back into a car owned by an employee of the bar. Salazar then drove his vehicle forward a few inches. Rios instructed Salazar to stop and wait for the police, and Salazar complied.

Officer Claudia Morillo testified that when she arrived, she found Salazar sitting in the front seat of his vehicle, which was in "the middle of the road." Salazar acknowledged that he had hit another vehicle and explained that he had not seen it while backing his vehicle out of its parking space.

Officer Morillo noticed a strong odor of alcohol on his breath and asked him to step out of the vehicle. She testified that Salazar had trouble getting out and held himself to the door frame for support. Salazar reportedly said that he had four beers and two other alcoholic drinks during the night. Officer Morillo took note of Salazar's slurred speech and red, bloodshot eyes, and she asked him to perform standardized field sobriety tests. She clarified that during these tests, officers look for specific clues of intoxication. According to Officer Morillo, Salazar exhibited six out of six possible clues of intoxication on the horizontal gaze nystagmus test, seven out of eight clues on the walk and turn test,

and three out of four clues on the one-leg stand test.   Officer Morillo concluded that Salazar was intoxicated and arrested him.   She further testified that Salazar consented to perform the same sobriety tests on video at the police station.   The video was played for the jury, and Officer Morillo pointed out many of the same clues of intoxication.

Salazar consented to provide a breath sample.   Detective Martinez verified that the Intoxilyzer machine was operating accurately and collected the sample, which returned results of .129 and .135.   Mary Ann Peralez, the State's expert, further explained the workings of the machine and the reliability of the results.

## B.    Applicable Law

In reviewing legal sufficiency, we view all the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).   When the record supports conflicting inferences, we presume the factfinder resolved the conflicts in favor of the verdict, and defer to that determination.   *Id.* at 448–49.

A person commits the offense of DWI if that person:   (1) is intoxicated; (2) while operating a motor vehicle; (3) in a public place.   TEX. PENAL CODE ANN. § 49.04(a). "Intoxicated" means:   (A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body; or (B) having an alcohol concentration of 0.08 or more.   *Id.* § 49.01(2) (West, Westlaw through 2017 1st C.S.).   There must be

13

a temporal link between defendant's intoxication and operation of the vehicle, but circumstantial evidence alone may be sufficient to prove such a link. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010).

**C.    Discussion**

Salazar does not dispute the "public place" element of the offense. *See* TEX. PENAL CODE ANN. § 49.04. We therefore focus on whether the State proved intoxication and the operation of the vehicle, as well as the necessary temporal link between the two. *See id.*; *Kuciemba*, 310 S.W.3d at 462.

Viewed in the light most favorable to the prosecution, the evidence establishes that Rios witnessed a collision caused by Salazar at 1:30 a.m. and that ten minutes later, officers found Salazar in the driver's seat of the same vehicle. *See Jackson*, 443 U.S. at 319. Salazar thereupon admitted that he had been involved in the collision and had consumed six alcoholic beverages that night. He had red eyes, a strong odor of alcohol on his breath, trouble supporting himself, and slurred speech. Salazar failed three field sobriety tests. "Being intoxicated at the scene of a traffic accident in which the actor was a driver is . . . circumstantial evidence that the actor" was intoxicated while driving. *See Kuciemba*, 310 S.W.3d at 462. This evidence would allow a rational trier of fact to find that Salazar operated a motor vehicle without the normal use of his mental or physical faculties, which are the only elements challenged by Salazar. *See* TEX. PENAL CODE ANN. §§ 49.01(2), 49.04(a); *Jackson*, 443 U.S. at 319.[6]

---

[6] Also as part of his second issue, Salazar argues that the evidence was "insufficient when it failed to demonstrate the threshold of probable cause and jurisdiction when it was discovered that the information was supported by an invalid complaint." Salazar asserts that an information is void if it is based upon a fatally defective complaint, citing *Davis v. State*, 503 S.W.2d 241 (Tex. Crim. App. 1974). However,

We overrule Salazar's second issue.

### III.    UNDISCLOSED WITNESSES

By his third issue, Salazar argues that the trial court reversibly erred by allowing the testimony of Rios, the security guard who witnessed the collision, because he was not disclosed via a witness list.    By his fifth and sixth issues, Salazar reurges these arguments and extends them to Detective Martinez, who collected Salazar's breath sample, and Mary Ann Peralez, the State's Intoxilyzer expert.

### A.    Applicable Law

Upon request, the State must give notice of whom it intends to call as a witness. *Depena v. State*, 148 S.W.3d 461, 465 (Tex. App.—Corpus Christi 2004, no pet.).    If the trial court allows a witness who was not on the State's list to testify, we review the decision for an abuse of discretion.    *Horner v. State*, 129 S.W.3d 210, 214 (Tex. App.—Corpus Christi 2004, pet. ref'd) (op. on reh'g); *see Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993) (en banc).    In our review, we consider two factors:    whether the prosecutor's actions constitute bad faith and whether the defendant could have

---

pursuant to changes in the law since *Davis*, "[d]efects in complaints must now be raised before trial . . . ; they are no longer jurisdictional in the traditional sense."    *Ramirez v. State*, 105 S.W.3d 628, 630 (Tex. Crim. App. 2003).

Furthermore, Salazar offers no explanation of how the sufficiency of the evidence relates to his concerns with probable cause, jurisdiction, and alleged defects in the information and complaint.    Instead, his argument is that an error in the complaint caused a fatal defect in the charging information.    Salazar did not object to the complaint or the accompanying information in any fashion prior to trial.    Accordingly, this argument is waived, despite Salazar's attempt to recast it as a matter of sufficiency.    *See id.*; *see also* TEX. CRIM. PROC. CODE ANN. art. 1.14 (West, Westlaw through 2017 1st C.S.); *Nam Hoai Le v. State*, 963 S.W.2d 838, 842 (Tex. App.—Corpus Christi 1998, pet. ref'd) (relying on article 1.14 to hold that a defendant's argument concerning a defective complaint and information was waived when not raised prior to trial).

reasonably anticipated the witness's testimony. *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000).

In determining whether the State acted in bad faith, we evaluate: (1) whether the State intended to deceive or disadvantage the defense, or whether it instead acted inadvertently or negligently; (2) whether the State's delayed notice left the defense with adequate time to prepare; and (3) whether the State freely provided the defense with information (e.g., by maintaining an open files policy or by promptly notifying the defense of new witnesses). *Horner*, 129 S.W.3d at 214; *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd).

In determining whether the defense could have reasonably anticipated the State's witness, we evaluate: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise (e.g., the defendant was aware of what the witness would say, or the witness testified about cumulative or uncontested issues); and (3) the degree to which the trial court was able to remedy that surprise (e.g., by granting the defense a recess, postponement, or continuance). *Horner*, 129 S.W.3d at 214; *Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.—San Antonio 2003, no pet.).

**B.    Discussion**

On January 19, 2016, Salazar made an oral request for the State's witness list:

Salazar:     Yes, Your Honor.  And if I can make an oral motion for a State's witness list, Your Honor?

The State:   That's fine, Your Honor.

The Court:   It'll be granted.   All right.

After the motion was granted, the hearing adjourned. The State concedes that when it assented to Salazar's request and the trial court granted it, this triggered an obligation to produce a witness list. The State further concedes that it did not subsequently produce a witness list.

However, the State asserts that there is no evidence of bad faith and that Salazar had reason to anticipate the witnesses' testimony.[7]

As to Detective Martinez, he was consistently discussed as a likely witness dating back to the second trial setting. The State described Detective Martinez as a "key witness," and his absence due to family emergency and surgery was the reason for at least two resettings. This establishes both a reason for Salazar to anticipate his testimony and an absence of bad faith on the part of the State. *See Wood*, 18 S.W.3d at 649.

As to Rios, during the suppression hearings, Salazar himself emphasized the importance of locating the unidentified security guards who witnessed the collision and prevented Salazar from leaving. At the January 19, 2016 trial setting, the State explained that it had at last located and identified the security guards, one of whom was Rios. The State provided Salazar's counsel with Rios's name and explained that it had subpoenaed Rios to appear. The State also subpoenaed Rios to appear at the April 19, 2016 trial setting, and Salazar acknowledged that he kept abreast of whom the State subpoenaed. When Salazar objected to his testimony at trial, the court offered to

---

[7] Salazar first objects to this situation on constitutional grounds, contending that the State's failure to duly produce a witness list infringed his rights under the Due Process Clause and Confrontation Clause of the United States and Texas Constitutions. However, Salazar never objected to the trial court on this basis. This argument is therefore not preserved for our review. *See* TEX. R. APP. P. 33.1(a).

postpone Rios's testimony until later in the proceedings to allow Salazar to prepare, but Salazar declined. Under the bad faith factor, these facts show the absence of any intent to deceive or inadequate time to prepare. *See Horner*, 129 S.W.3d at 214. The same facts gave Salazar reason to expect Rios to be called and show that any failure to disclose this witness resulted in limited surprise and disadvantage, which Salazar did not take the opportunity to cure. *See id.* Accordingly, neither factor favors the exclusion of Rios as a witness. *See Wood*, 18 S.W.3d at 649.

Salazar also complains, very briefly, of the trial court's decision to allow the testimony of Peralez. Salazar asserts he was prejudiced because Peralez was not subpoenaed or disclosed on a witness list.

However, Salazar does not contend that the State acted in bad faith by belatedly disclosing Peralez. Salazar did not attempt "to elicit evidence of harm at trial," and he offers no evidence or further explanation concerning any prejudice that resulted. *See Hardin*, 20 S.W.3d at 89. Instead, the record indicates that no prejudice resulted: after Salazar objected to Peralez, the State twice offered to continue proceedings to allow Salazar to prepare for Peralez's testimony or to move for her exclusion, but Salazar rejected continuance each time. *See Richardson v. State*, 744 S.W.2d 65, 77 (Tex. Crim. App. 1987) (en banc) (upholding admission of late-disclosed witness based on trial court's offer "to consider a postponement so that appellant could prepare for the testimony, an offer upon which the appellant failed to act," as well as appellant's "fail[ure] to adequately explain" how the untimely disclosure showed bad faith or prejudice) *judgment vacated on other grounds*, 492 U.S. 914 (1989). Accordingly, "[a]bsent a clear

18

showing of actual harm or bad faith, we hold that the trial court did not abuse its discretion" in allowing Peralez to testify. *See Hardin*, 20 S.W.3d at 89–90.

Having found no abuse of discretion as to each of the three witnesses challenged, we overrule Salazar's third and sixth issues. We also overrule Salazar's fifth issue to the extent that it challenges the trial court's decision to allow these witnesses to testify.

## IV. INSTRUCTION CONCERNING REASONABLE DOUBT

By his fourth issue, Salazar argues that the trial court erred by instructing the jury on the definition of the term "reasonable doubt." In particular, Salazar objects to a sentence in the charge which instructed the jury, "It is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt."

This argument was specifically rejected in *Woods v. State.* 152 S.W.3d 105, 115 (Tex. Crim. App. 2004) (en banc). There, the appellant objected to the inclusion of the very same sentence in the charge. *Id.* at 114–15. The court held that such an instruction remained constitutionally valid, even after multiple shifts in precedent concerning jury instruction on reasonable doubt. *Id.* at 115; *Mays v. State*, 318 S.W.3d 368, 389 (Tex. Crim. App. 2010) (same).

Salazar further argues that the charge wrongly suggested that it was his burden to create a reasonable doubt as to his guilt. However, Salazar does not account for those portions of the charge which specifically instructed the jury that

> The law does not require the defendant to prove his innocence or produce
> any evidence at all. . . . The prosecution has the burden of proving the
> defendant guilty and it must do so by proving each and every element of the

19

offense charged beyond a reasonable doubt and if it fails to do so, you must acquit the defendant.

Salazar's fourth issue is without merit. We overrule it.

## V. DENIAL OF MOTION TO SUPPRESS

By his fifth issue, Salazar challenges the denial of his motion to suppress. Salazar asserts that he was subjected to a citizen's arrest when Rios approached him after the collision and told him to stop and wait for police. Salazar asserts that the State failed to carry its burden to demonstrate the legitimacy of the warrantless citizen's arrest, which requires the suppression of any subsequently obtained evidence.

In the alternative, Salazar argues that even assuming he was not placed under citizen's arrest by Rios, his subsequent, formal arrest by Officer Morillo violated the code of criminal procedure.

### A. Standard of Review and Applicable Law

When reviewing a trial judge's ruling on a suppression motion, the trial judge's determination of facts are afforded almost total deference, provided that those determinations are supported by the record. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011). We also afford great deference to rulings on mixed questions of law and fact which depend upon evaluations of credibility and demeanor, but when credibility and demeanor was irrelevant, we conduct a de novo review. *Id.* All purely legal questions are reviewed de novo. *Id.*

The Texas exclusionary rule applies to private individuals as well as government actors, and thus an illegal citizen's arrest may require the exclusion of evidence. *Miles v. State*, 241 S.W.3d 28, 34 (Tex. Crim. App. 2007). In determining whether a citizen's

20

arrest has occurred, the "primary question is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to a formal arrest, given all the objective circumstances." *Melendez v. State*, 467 S.W.3d 586, 592 (Tex. App.—San Antonio 2015, no pet.) (applying the rule of *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012) in the context of a citizen's arrest); *accord Jones v. State*, 490 S.W.3d 592, 596 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

An individual may be subject to warrantless arrest only if probable cause exists with respect to the individual and the arrest falls within one of the exceptions set out in Texas Code of Criminal Procedure articles 14.01–14.04. *Torres v. State*, 182 S.W.3d 899, 901 (Tex. Crim. App. 2005) (en banc); *see* TEX. CODE CRIM. PROC. ANN. arts. 14.01–.04 (West, Westlaw through 2017 1st C.S.). Under the citizen's arrest rule, any person may, without a warrant, arrest an offender when the offense is committed in his presence or within his view, if the offense is one classed as a felony or an offense against the public peace. TEX. CODE CRIM. PROC. ANN. art. 14.01(a). The offense for which Salazar was arrested—DWI—is considered by its "very nature" to be an offense against the public peace. *See Miles*, 241 S.W.3d at 41.

## B.    Discussion

Salazar first argues that Rios conducted a citizen's arrest that was not justified by probable cause or any statutory exception. However, the objective circumstances indicate that Rios did not conduct a citizen's arrest. *See Ortiz*, 382 S.W.3d at 372. Rios simply instructed Salazar not to drive away, and Salazar complied. *See Jones*, 490 S.W.3d at 596–98 (finding no citizen's arrest occurred when a security guard instructed

21

a man holding a marijuana cigarette to come talk to him, and the man complied, whereupon a pat down revealed a stolen debit card). Rios did not take Salazar's keys or driver's license, display force, assert authority, or take any other measures to effect a restraint "comparable to a formal arrest." *See Melendez*, 467 S.W.3d at 592; *cf. Romo v. State*, 577 S.W.2d 251, 252–53 (Tex. Crim. App. [Panel Op.] 1979) (finding a citizen's arrest where a government employee who was not a peace officer deployed red flashing lights, conducted a traffic stop of a DWI suspect, and confiscated the suspect's driver's license so that he could not leave); *Miles v. State*, 194 S.W.3d 523, 525–27 (Tex. App.— Houston [1st Dist.] 2006) (finding citizen's arrest where tow truck driver pursued and boxed in a person fleeing from a DWI collision and attempted to reach in and grab his keys), *aff'd*, 241 S.W.3d 28 (Tex. Crim. App. 2007); *Kunkel v. State*, 46 S.W.3d 328, 330 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) (finding citizen's arrest where tow truck driver pursued and boxed in a DWI suspect's vehicle, confiscated her keycard for the gate she was attempting to open, and physically prevented her from exiting her vehicle); *Trent v. State*, 925 S.W.2d 130, 132–33 (Tex. App.—Waco 1996, no pet.) (finding citizen's arrest where bar manager and his co-worker approached intoxicated driver, turned off the car and removed the keys, and then handcuffed driver and called the police). Because there was no citizen's arrest, we need not consider whether such an arrest would have been justified.

In the alternative, Salazar argues that his subsequent, formal arrest by Officer Morillo violated article 14.01(b), which allows an officer to arrest a person for an offense committed in the officer's presence or view. *See* TEX. CODE CRIM. PROC. ANN. art.

22

14.01(b). According to Salazar, no offense occurred in Officer Morillo's presence or view, because he stopped driving the vehicle several minutes before her arrival. *See id.*

In *Woodard*, the court of criminal appeals found that there was no violation of article 14.01(b) based on highly similar facts. 341 S.W.3d at 414. There, as here, police responded to a call concerning a single-driver accident and encountered a man matching the driver's description near the scene. *See id.* at 407. As Salazar did here, Woodard admitted that he had been involved in the accident and that he had been drinking heavily. *See id.* at 408. As Salazar did here, Woodard smelled of alcohol, had glazed eyes, and was unsteady, and he failed multiple field sobriety tests. *See id.* The court found that the subsequent arrest did not violate article 14.01, emphasizing that the "ultimate question" under this article was "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Id.* at 412. The *Woodard* court held that the officers established a valid basis for arrest through a combination of prior knowledge and personal observation: the defendant's own admission of drinking and being involved in the collision and visual confirmation of intoxication through field sobriety testing. *Id.* at 414.

Due to the strong factual similarity, we view this case as controlled by *Woodard*. Accordingly, we conclude that the warrantless arrest by Officer Morillo was justified by probable cause and article 14.01(a)(1). *See id.*; *Torres*, 182 S.W.3d at 901.

Salazar's fifth issue is overruled.

23

## VI.    ADMISSION OF WRITTEN INTERVIEW

By his seventh issue, Salazar protests the trial court's decision to admit a written record of his interview with Officer Morillo while in custody.   Salazar challenges the admission of this interview on the ground that, according to the report, he was not given statutory or *Miranda* warnings until 3:59 a.m., well after the completion of his interview at 2:35 a.m.[8]

In response, the State asserts that Salazar waived any complaint concerning a deficiency in these warnings because Salazar failed to mention a deficiency in his motion to suppress.   Instead, Salazar moved for suppression solely on the ground that his arrest was not supported by probable cause.   The State contends that the point of error on appeal therefore does not comport with the objection made at trial.   *See Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014).   We agree.

Even assuming the motion to suppress would have preserved error regarding his interview, Salazar subsequently waived this objection at trial:   when the State proffered the interview as an exhibit, Salazar inspected the document, asked a single question on voir dire, and then stated, "We have no objections, your honor."   The interview was then admitted.   "[A] statement of 'no objection' when the complained-of evidence is eventually proffered at trial—at least, without more—will signal to the trial court an unambiguous intent to abandon the claim of error that was earlier preserved for appeal."   *Thomas v.*

---

[8] Officer Morillo testified that the report's notation of 3:59 a.m. was actually a typographical error for 1:59 a.m., and that she administered the required warnings before commencing her interview.   Because of our disposition of this issue, we need not evaluate her testimony.   Also within this issue, Salazar reasserts many of his previous arguments challenging the legality of his arrest.   We need not address these arguments again.   *See* TEX. R. APP. P. 47.1.

*State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013).[9]  Salazar's statement that he had

"no objection" to the admission of the interview waived any earlier-preserved error.

We conclude that Salazar's seventh issue is waived.

## VII.  CONCLUSION

Having overruled all of Salazar's preserved issues, we affirm the judgment of the

trial court.


NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 21st
day of December, 2017.

---

[9] This rule is subject to an exception, but the context of Salazar's "no objection" statement shows that this exception does not apply here.  *See Thomas v. State*, 408 S.W.3d 877, 885 (Tex. Crim. App. 2013).